PEOPLE v. CAMPBELL.

1. HOMICIDE — COMMON-LAW NEGLIGENT HOMICIDE—CRIMINAL IN-
TENT IMPUTED.
     In Michigan, under the common law, one is not criminally
     responsible for death from negligence unless the negli-
     gence is so great that the law can impute a criminal
     intent.

2. SAME—WHEN NEGLIGENCE EQUIVALENT TO CRIMINAL INTENT.
     If death ensues from negligence which, shows a culpable
     indifference to the safety of others, the negligence is said
     to be gross or wanton or wilful, and is equivalent to
     criminal intent, a necessary element of every common-
     law crime, and one whose acts cause death under such
     circumstances is guilty of involuntary manslaughter or
     common-law negligent homicide.

3. SAME — NEGLIGENT HOMICIDE COMMITTED BY OPERATION OF
VEHICLE—CRIMINAL INTENT ELIMINATED BY STATUTE.
     Act No. 98, Pub. Acts 1921, defining. the crime and pro-
     viding the penalty for negligent homicide when committed
     by the operation of a vehicle, creates a lesser offense
     than involuntary manslaughter or common-law negligent
     homicide, by eliminating the element of criminal intent,
     and making one criminally responsible for a lower degree
     of negligence than gross, but higher than slight.

4. NEGLIGENCE—SLIGHT, ORDINARY AND GROSS NEGLIGENCE.
     All negligence below that called gross negligence is slight
     negligence, and ordinary negligence; slight negligence is
     never actionable either in the civil or criminal law, or-
     dinary negligence is based on the fact that one ought to
     have known the results of his acts, and gross negligence
     rests on the assumption that he did know but was reck-
     lessly or wantonly indifferent to the results.

5. HOMICIDE—STATUTORY OFFENSE—ORDINARY NEGLIGENCE RENDERS
ONE CRIMINALLY LIABLE—INSTRUCTIONS.
     In a prosecution for negligent homicide under Act No. 98,

[1]Homicide, 29 C. J. § 141; [2]Id., 29 C. J. § 141; [3]Id., 29 C. J. §
142; [4]Negligence, 29 Cyc. p. 423; [5]Homicide, 30 C. J. § 660.

Pub. Acts 1921, the trial court properly instructed the jury that death resulting from ordinary negligence constituted an offense under the statute.

6. SAME—CONTRIBUTORY NEGLIGENCE OF DECEASED NO DEFENSE.

Contributory negligence of deceased is not a defense in a prosecution under the statute.

7. SAME — CONTRIBUTORY NEGLIGENCE OF DECEASED SHOULD BE CONSIDERED.

Although contributory negligence of deceased is not a defense under the statute, it should be considered as bearing upon the claimed culpable negligence of defendant.

8. SAME — INSTRUCTION THAT DECEASED WERE NOT GUILTY OF CONTRIBUTORY NEGLIGENCE ERRONEOUS UNDER EVIDENCE.

Under evidence showing that at the time of the accident, on a dark, misty night, deceased were walking six feet from the curb, on a much traveled highway, with their backs to approaching cars, the trial judge was in error in instructing the jury that deceased were not guilty of contributory negligence, as a matter of law, since, under the circumstances, the defendant was entitled to have the jury consider whether deceased were using ordinary care for their own safety.

9. HIGHWAYS AND STREETS—PEDESTRIANS AND AUTOMOBILE DRIVERS HAVE RECIPROCAL RIGHTS AND DUTIES.

Pedestrians have equal rights and responsibilities with the drivers of automobiles in the use of the public highways.

10. HOMICIDE — TRIAL—AUTOMOBILE DRIVER MAY ASSUME THAT PEDESTRIAN WILL USE ORDINARY CARE.

The driver of an automobile has a right to assume that a pedestrian will use ordinary care for his own safety, and any assumption that he has a right to indulge in may be considered by the jury with the other facts in determining his negligence in causing pedestrian's death.

11. HIGHWAYS AND STREETS — PEDESTRIANS MAY ASSUME THAT AUTOMOBILE DRIVER WILL USE ORDINARY CARE BUT NOT RELIEVED FROM USING DUE CARE THEMSELVES.

Pedestrians in a public highway have a right to assume that the driver of an automobile will use ordinary care

---

[6]Homicide, 29 C. J. § 141; [7]Id., 29 C. J. § 141; [8]Id., 30 C. J. § 660; [9]Motor Vehicles, 28 Cyc. p. 27; [10]Id., 28 Cyc. p. 27; [11]Id., 28 Cyc. p. 29; 30 L. R. A. (N. S.) 458; 33 L. R. A. (N. S.) 403; L. R. A. 1918B, 954; 37 A. L. R. 594; 6 R. C. L. Supp. 129.

for their protection, but they may not rest content on that assumption and take no care for their own safety.

12. EVIDENCE—HIGHWAYS AND STREETS—JUDICIAL NOTICE TAKEN THAT EXTENSIVELY TRAVELED HIGHWAY IS MORE DANGEROUS THAN A RAILROAD TRACK.

It is a matter of common knowledge that at the present time a highway extensively traveled is a place of greater danger than a railroad track, and with this knowledge a pedestrian must be held to exercise a reasonable degree of care for his own protection.

13. CRIMINAL LAW — NEGLIGENT HOMICIDE — ERRONEOUS INSTRUCTION NOT PREJUDICIAL.

Instructions to the jury, in a prosecution for negligent homicide, as to the care an operator of an automobile should use and the proper speed at which the car should be driven in approaching and in traversing an intersecting highway, bridge, dam, sharp curve, or steep descent, under the provisions of the motor-vehicle law, held, not prejudicial, although there was no evidence rendering said provisions of the law applicable; the jury probably not being confused or misled thereby.

14. SAME—EVIDENCE—ADMISSIBILITY.

Testimony that defendant violated the motor-vehicle law by driving at an excessive rate of speed in the business section of a city, at a point remote from the place of the accident, shortly before it occurred, was neither competent or material.

15. SAME—TRIAL—INSTRUCTION.

Although an instruction that the driver of an automobile should not operate it at a greater rate of speed than 15 miles an hour in the business portion of a city, erroneous because not applicable, standing alone, might not have been prejudicial, yet, where it was coupled with incompetent testimony that defendant had violated said provision of the law shortly before, it constituted reversible error.

SHARPE, C. J., and STEERE and WIEST, JJ., dissenting.

Exceptions before judgment from Ottawa; Cross

---

¹²Evidence, 23 C. J. § 1984; ¹³Criminal Law, 17 C. J. § 3690; ¹⁴Homicide, 30 C. J. § 445; ¹⁵Criminal Law, 17 C. J. §3690.

(Orien S.), J.   Submitted October 15, 1926.   (Docket No. 126.)    Decided February 4, 1927.

Kenneth Campbell was convicted of negligent homicide under Act No. 98, Pub. Acts 1921.    Reversed.

*Louis H. Osterhous* and *Gerrit J. Diekema*, for appellant.

*Andrew B. Dougherty*, Attorney General, and *Fred T. Miles*, Prosecuting Attorney, for the people.

McDONALD, J.    The defendant was convicted of negligent homicide by the operation of an automobile at an immoderate rate of speed and in a careless, reckless and negligent manner, contrary to the provisions of Act No. 98, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 15226 [2-4]).

After dark, in the early evening of January 31, 1926, he was driving an automobile from the city of Grand Haven in Ottawa county to the village of Spring Lake.   Crossing the bridge over Grand river, his way led around a curve on to trunk line M 16. While making this curve, he ran down and instantly killed Sidney Braak and his wife, Rosalin Braak, who were walking in the highway.   The defendant was alone in his car and was the only eyewitness to the accident.   The night was dark and misty.   He testified that he was driving about 20 miles an hour and that, though he was watching the road, he did not see them until he came upon them, and it was then too late to turn or stop his car and avoid hitting them.

The people claim that he was driving at an immoderate rate of speed under the circumstances; that he was not keeping a proper look out for pedestrians; and that he did not have his car under such control that he could stop it within the range of his lights.

The first assignment of error which we will discuss raises the question as to the degree of negligence

necessary to constitute the offense named in the statute under which the defendant was prosecuted. On the trial, counsel for the defense claimed that to establish the crime the people must prove something more than ordinary negligence, and requested the court to so charge the jury. The request was denied and the jury were instructed, in substance, that the defendant was guilty if he did not use ordinary care.

In their brief, counsel's argument leads to the conclusion that,

"To prove the statutory offense of negligent homicide by the operation of a vehicle, it is necessary to show gross negligence in the sense of very great negligence, or gross failure to exercise proper care; a failure to exercise even slight care."

In this State, under the common law, one is not criminally responsible for death from negligence unless the negligence is so great that the law can impute a criminal intent. If death ensues from negligence which shows a culpable indifference to the safety of others, the negligence is said to be gross or wanton or wilful, and is equivalent to criminal intent, a necessary element of every common-law crime. One whose acts cause death under such circumstances is guilty of involuntary manslaughter or common-law negligent homicide. See *People* v. *Barnes*, 182 Mich. 179.

By the enactment of this statute the legislature of 1921 obviously intended to create a lesser offense than involuntary manslaughter or common-law negligent homicide, where the negligent killing was caused by the operation of a vehicle. To do this it eliminated, as necessary elements of the lesser offense, negligence classed as wanton or wilful. Included in these terms is gross negligence. So that in the enactment of the statute there was expressly eliminated, as elements of the crime, all negligence of such character as to

evidence a criminal intent; and as we have before pointed out, wanton or wilful or gross negligence was of that character.   Therefore, this statute was intended to apply only to cases where the negligence is of a lesser degree than gross negligence.

According to the classification of degrees of negligence by courts and text-book writers, all negligence below that called gross is slight negligence and ordinary negligence.   Slight negligence is never actionable either in the civil or criminal law and is not so under this statute.   Ordinary negligence is based on the fact that one ought to have known the results of his acts; while gross negligence rests on the assumption that he did know but was recklessly or wantonly indifferent to the results.   The common law makes one guilty of the latter degree of negligence criminally responsible; and probably in view of the numerous fatalities caused by the operation of automobiles on our streets and highways, the legislature was led to enact a statute making one criminally responsible for a lower degree of negligence, for any negligence between slight and gross.   Terms and classification of negligence are confusing.   But, regardless of that, the basic idea of this statute is that every one who places himself in a situation where his acts may affect the safety of others must use every reasonable precaution to guard against injuring them.   If he does not do so, and death ensues, he is guilty of negligent homicide under this statute.   It is a harsh statute, but finds justification in the serious results that are liable to follow the negligent operation of automobiles on extensively traveled streets and highways.   The court did not err in refusing defendant's request to charge and in instructing the jury that death resulting from ordinary negligence constituted an offense under this statute.

Further, it is urged by defendant's counsel that the

doctrine of contributory negligence applies to relieve one of criminal responsibility under this statute. The court refused to instruct the jury in accordance with counsel's view, and in that they say he erred. There is some conflict in the authorities on this question, but we think that the great weight of authority sustains the action of the trial court in holding that contributory negligence of the deceased is not a defense in such cases. Such was the holding of this court in *People* v. *Barnes, supra,* wherein the rule announced in *State* v. *Campbell,* 82 Conn. 671 (74 Atl. 927, 18 Ann. Cas. 236, 135 Am. St. Rep. 293), was quoted with approval, as follows:

"The rule of law concerning contributory negligence by the injured person, as a defense in civil actions for damages for personal injuries, had no application to this case. The State was required to prove the alleged unlawful act of the accused and its consequences, but not that the deceased exercised due care to avoid the consequences of that unlawful act. The court did not, either by its refusal to charge as thus requested, or by the language used, give the jury to understand, as the defendant claims it did, that the conduct of the deceased was eliminated from the case. The court properly said to the jury that the State must clearly show that deceased's death was the direct result of the defendant's negligence, but that the injured man's conduct became material only as it bore upon the question of such negligence of the accused, and that if the culpable negligence of the accused was the cause of Mr. Morgan's death, the accused was responsible under the criminal law, whether Mr. Morgan's failure to use due care contributed to his injury or not."

In the *Barnes Case* the defendant was prosecuted for the negligent killing of one Mary Robb by the operation of an automobile. In speaking of how the contributory negligence of the deceased might be considered by the jury, this court said:

"So we say here that, while the claimed contributory

negligence of Mary Robb is no defense in this case, yet it does not follow that her conduct should be eliminated from the case; it should be considered as bearing upon the claimed culpable negligence of the respondent, and the question should all the time be: Was respondent responsible under the law, whether Mary Robb's failure to use due care contributed to her injury or not?"

In the instant case the court eliminated the question from the case by instructing the jury, as a matter of law, that the deceased were not guilty of contributory negligence.    In this we think he erred.

The defendant was driving six feet from the curb. The night was dark and misty.    He testified that he was keeping a lookout, but that he assumed that no person would be walking out in that part of the highway where he was driving.    The deceased were not crossing the highway.    They were walking six feet from  the curb with their backs to approaching cars. We think it was for the jury to say whether, under all of the circumstances, they were using ordinary care for their own safety in walking six feet out from the curb in a dark and misty atmosphere on an extensively traveled highway with their backs to approaching automobiles.    Considering the darkness, the misty atmosphere, the slippery condition of the pavement, their position in the highway, the fact that there was a safer place to walk, and their knowledge of the fact that automobiles would be constantly overtaking them from the rear, were the deceased, at the time of the accident, using ordinary care for their own safety? If they were not, that fact would not be a defense, but it would be an important factor in the case which the defendant would be entitled to have the jury consider.    Pedestrians have equal rights with automobiles in the use of the public highways.    Their duties are reciprocal.    The driver of an automobile has a right to assume that a pedestrian will use ordinary

care for his own safety, and any assumption that he has a right to indulge in may be considered by the jury with the other facts in determining his negligence.    Pedestrians in a public highway have a right to assume that the driver of an automobile will use ordinary care for their protection, but they may not rest content on that assumption and take no care for their own safety.    Some of my Brethren are of the opinion that the decedents cannot be said to have been guilty of contributory negligence, because they had a legal right to walk any place in the highway, because they had a right to walk where they were walking at the time of the accident.    It is rather a question of prudence than of legal right.    One may have a right to amble all over a highway, but a man of ordinary prudence would hardly do so when it is filled with moving automobiles.    It is a matter of common knowledge that at the present time a highway extensively traveled is a place of greater danger than a railroad track. ·   With this knowledge, a pedestrian must be held to exercise a reasonable degree of care for his protection.    Were the decedents exercising such care for their safety under the conditions existing at the time of the accident?    The particular circumstances of the occasion made the question one for the jury.

Complaint is made that in his charge to the jury the court called attention to numerous provisions of the motor-vehicle law, none of which was applicable to any facts in the case.    He instructed the jury as to the care an operator of an automobile should use, and the proper speed at which the car should be driven in approaching an intersecting highway, bridge, dam, sharp curve or steep descent, and in traversing an intersecting highway, bridge, dam, sharp curve or steep descent.    There is no evidence that the defendant violated these provisions of the law, but, though it was in no way applicable to the facts in the case, we are not

convinced that the jury was confused or misled by the instruction.    But the situation was different in regard to the effect of the instruction as to the legal rate of speed in cities.    Mr. Jorgensen, a witness for the people, had been permitted to testify as to the rate of speed the defendant had driven his car in the business section of the city of Grand Haven just before the accident.    So when the court instructed the jury that the driver of an automobile should not operate it at a greater rate of speed than 15 miles an hour in the business portion of a city, he emphasized the fact that the defendant had violated the law shortly before the accident, and at a point remote from it.    The testimony of the witness as to the rate of speed the defendant was driving in the business section of the city of Grand Haven was neither material nor competent.    It should have been excluded.    Standing alone it might not have seriously prejudiced the defendant's case.    Standing alone, the judge's charge in respect to the permissible speed in cities might not have misled the jury; but coupled with the incompetent testimony we think it constitutes reversible error.

For the reasons indicated the judgment of conviction is reversed and a new trial granted.

BIRD, SNOW, FELLOWS, and CLARK, JJ., concurred with McDONALD, J.

WIEST, J. (*dissenting*).    The opinion prepared by Mr. Justice McDONALD does not meet with my approval.

Act No. 98, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 15226 [2-4]), defines a crime of lesser degree than manslaughter and denominates it negligent homicide.    That act provides:

"Every person who, by the operation of any vehicle at an immoderate rate of speed or in a careless, reck-

237—Mich.—28.

less or negligent manner, but not wilfully or wantonly, shall cause the death of another, shall be guilty of the crime of negligent homicide.   *    *    *

"In any prosecution under this act, whether the defendant was driving at an immoderate rate of speed shall be a question of fact for the jury and shall not depend upon the rate of speed fixed by law for operating such vehicle."

This statute is plain, and application of its provisions to defendant's testimony of how the accident happened established his guilt.   The statute rests guilt upon ordinary negligence, involves no intent and excludes need of establishing gross, wilful or wanton negligence or acts *malum in se*.   It leaves questions of whether the rate of speed was immoderate or operation of the vehicle careless, reckless or negligent to depend upon the particular circumstances of each case.   It is an innovation in the law of homicide, departs from the doctrines of common-law manslaughter and carries its own yardstick for measuring culpability.   In some States a similar culpability is fixed and accountability exacted under statutes defining manslaughter in the fourth degree.   Decisions relative to such degree of manslaughter are helpful, but decisions relative to voluntary or involuntary manslaughter, as at common law, afford no help, for they involve considerations not at all applicable under the provisions of this statute.   In manslaughter the negligence of the operator of an automobile must be something more than ordinary negligence.   As stated, this statute provides for an offense of lesser degree than manslaughter, for it admits, in case of acquittal of manslaughter, of a conviction of negligent homicide. The wilful, wanton and culpable negligence involved in manslaughter are all eliminated in a prosecution under this statute, for it plants negligent homicide upon ordinary negligence causing the death of a human being.   In manslaughter it has been held that the

negligence must be something more in degree than is sufficient to afford a right of action for damages. In negligent homicide the negligence need be no more than that ordinarily involved in an action for damages.

The law seeks to reach a consequence altogether too frequent under careless driving and to fill a gap through which those guilty of killing a human being too often avoided accountability. With the policy of the law we have no concern, but with its due administration we are much concerned.

Defendant drove his automobile upon and killed two persons walking in the highway. Under his own testimony he was guilty of negligent homicide. The accident happened about 7 o'clock in the evening of January 31, 1926. Defendant testified:

"The pavement was damp and wet that night and it was misty and dark, * * * Just before I started to turn this curve my lights were shining directly in front of me. * * * The curve to the right in the road, or anything on there was not visible to me or within the range of my lights until I had turned my car in that direction. Just as I did turn and started around this curve I hit the people pretty near as soon as I saw them. * * * I was driving about five or six feet from the curb. I could not say how quickly I saw them after I started to make the turn beyond the Three Point Garage. It was just when I saw them I hit them, that was all. I do not know whether they had been walking in the road before or only just come onto the road at that point. I haven't any idea of the facts. As I swung around the curve they were suddenly there in front of me and I struck them almost instantly. I did not have any time either to turn or stop, after seeing them. * * * I cannot explain the accident, how it happened, except the lights to the left of me, at the Three Point Garage, and not seeing to the right of me on account of there not being very much spread of the lights, and I turned to the right and they were there. It was dark on the right side while the bright lights of the garage were over on the left side of the

road.   I was not driving fast.   I judge about 20 miles an hour.   *   *   *

"As I went by the garage I could see ahead about 15 feet.   I probably could stop my car in 15 feet at the rate at which I was going.   When these people were within 15 feet of me I did not see them, I don't believe I did.   My lights would show up these people that far, if they were trained on them.   They were not trained on them directly, I believe.   They were trained straight ahead.   I was going to make a curve. It was just previous to making the curve.   My lights were shining ahead of me before I made the curve, my lights were not trained on them as I hit them. I could see 15 feet ahead of the car.   These people were ahead of my car after I turned.   When I made the curve then I saw them.   I couldn't say how far ahead of me they were when I saw them.   I saw them just as I hit them.   *   *   *   At some moment, or second before, I struck these people, I remember I did see them.   I couldn't say if they were walking or standing still.   I don't know; they were walking towards Spring Lake.   I don't believe they saw me at all before I struck them.   Before I hit them I don't believe they knew I was there.   I did not blow my horn.   I was driving with my eyesight blurred.   I could see where I was going straight ahead of me but turning to the right I couldn't see where my car was going very well.   I did not sound my horn so that I could warn any one that was ahead of me where I couldn't see.   Those people were struck by my car without any warning at all.   I do not know at what point I was when I struck them.   Whether it was in front of the Three Point Garage or not, I do not know.   *   *   *   Neither one turned their face towards me when I hit them.   *   *   *   I was turning to the right when I hit them, making the curve. As I made the curve that night I did not blow my horn and gave no warning of my approach at all.   I could not see very well.   It was misty.   *   *   * The spot light was not burning.   I don't believe it was in good condition.   *   *   *   My judgment is I was going about 20 miles an hour.   I think that is the same as I had been driving all the time since I left home.   I slowed down a little bit on account of

the glare of the lights.      I don't remember whether the brakes held or not."

Under defendant's testimony there was no issue of contributory negligence on the part of the pedestrians, and it would have been a mockery of the rights of the people and the due course of justice to have injected such an issue.      The only asserted negligence on the part of the persons killed was their walking in the highway with the traffic.      Negligence on the part of the persons killed, if any, was no defense.      Contributory negligence has no place in the law of crimes. *State* v. *Gray*, 180 N. C. 697 (104 S. E. 647); *State* v. *Miller* (Or.), 243 Pac. 72; *State* v. *Hanahan*, 111 S. C. 58 (96 S. E. 667); *Bowen* v. *State*, 100 Ark. 232 (140 S. W. 28); *Lauterbach* v. *State*, 132 Tenn. 603 (179 S. W. 130); *State* v. *Weisengoff*, 85 W. Va. 271 (101 S. E. 450); *State* v. *Elliott*, 94 N. J. Law, 76 (110 Atl. 135); *Thornton* v. *State* (Ala. App.), 108 South. 80.

The rule is well settled that contributory negligence on the part of the person killed is no defense.      However, defendant's conduct complained of must be viewed in the light of all its attendant circumstances in order to determine whether his act was the cause of the killing, but for no other purpose.      Of course, there must be a causal connection established between the negligence of defendant and the killing, but when this is made to appear the issue admits of no consideration of concurrent negligence beyond the purpose we have stated.

In *Schultz* v. *State*, 89 Neb. 34 (130 N. W. 972, 33 L. R. A. [N. S.] 403), a manslaughter case, it was said of contributory negligence:

"The State was required to prove the alleged unlawful act of the accused and its consequences, but not that the deceased exercised due care to avoid the consequences of the unlawful act.      The authorities are not in conflict as to this question.      Uniformly the

courts have said a man will not be excused for killing another, even though his victim was negligent. While contributory negligence is a complete defense to an action for private injury resulting from homicide, it is no defense to a prosecution for a public wrong. 21 Am. & Eng. Enc. Law (2d Ed.), 195. We think the refusal of this instruction (contributory negligence) was clearly right for the further reason that the evidence disclosed no theory upon which such an instruction could be predicated."

In *Maxon* v. *State*, 177 Wis. 379 (187 N. W. 753, 21 A. L. R. 1484), the charge was manslaughter. In the opinion it was said:

"It is further urged on defendant's behalf that the evidence in this case warrants or requires a determination to the effect that the deceased was himself guilty of negligence in his management of the motorcycle to such an extent that he should be held to have proximately contributed to the collision, and that such contributing negligence by him may be successfully interposed as a bar to this prosecution, as much so as it might or could be in a civil action against him for the resultant damages.

"In a criminal prosecution such as this by the State, in which a defendant is charged with the taking of a human life, the fact that deceased may have in a measure, by his own carelessness, contributed to the unfortunate result cannot be recognized as a defense. The reason is plain, owing to the substantial difference between a criminal action prosecuted on behalf of the State and a civil action instituted to recover the damages resulting from the same accident. While no doubt the entire circumstances surrounding the killing are proper for the consideration of the jury in determining whether or not the defendant was negligent, yet his criminal negligence, if it exists, cannot be wiped out by the fact that the deceased was also negligent."

Negligent homicide, within the meaning of this statute, involves no element of gross or wilful negligence, and the killing could not in any event be adjudged a mere misadventure, if occasioned by the

careless, reckless, or negligent operation of the automobile by the accused.

The statute (1 Comp. Laws 1915, § 4818) provides:

"Upon approaching a person walking in the roadway of a public highway, * * * a person operating a motor vehicle shall slow down to a speed not exceeding ten miles an hour and give reasonable warning of his approach and use every reasonable precaution to insure the safety of such person." * * *

This statute fully recognizes the right of persons to walk in the *roadway* of a public highway, and its mandate of care to be exercised by operators of motor vehicles is to safeguard pedestrians. Defendant did not slow down and gave no warning of his approach because he did not discover the pedestrians in time to do so. He did not see the pedestrians until just as he struck them because he had no view of the roadway. This will be discussed later.

The statute (Comp. Laws Supp. 1922, § 4817) provides:

"No person shall operate a motor vehicle upon a public highway at a rate of speed greater than is reasonable and proper, having regard to the traffic and use of the highway, or so as to endanger the life or limb of any person." * * *

This statute speaks no uncertain language. *State v. Schaeffer*, 96 Ohio St. 215 (117 N. E. 220, L. R. A. 1918B, 945, Ann. Cas. 1918E, 1137). In that case it was said:

" 'Safety first' must not be sacrificed for 'speed first.' * * *

"The day has long been here when the authorities should exercise every power under every law of the State to protect the safety of the public, its life, its limb; and in order to meet every possible situation of danger, some such general, comprehensive and elastic statute as section 12603 is absolutely necessary.

"The careful, conservative driver need have no fear

of it, and the reckless, wanton speed-maniac needs to be kept in fear of it."

The Ohio statute mentioned is like ours.    Civil accountability is but a slight deterrent; it may be met by insurance.    As yet criminal accountability may not be so met.    Under the circumstances detailed by defendant the speed of his car was unreasonable and reckless, for he could not see the roadway.

As said in *Lauterbach* v. *State, supra:*

"One who disobeys the statutory rule as to speed is acting in defiance of law, and must be held to have anticipated the possibility of any injury caused by his recklessness."

No person may operate a vehicle on a public highway and omit reasonable care on the assumption that there are no pedestrians also using the highway.    At night the operator of an automobile must have a light showing the path he is to travel and sufficient to disclose the presence of pedestrians using the same roadway.    It is manifest that the lights on defendant's car did not show the roadway because of the curve in the road.    He, therefore, came upon the pedestrians with his eyes, as it were, blindfolded.    He was aware of the curve in the road, and must be held to have known that, in making the curve, his lights would not show him the roadway.    Ordinary prudence required him to slow down to a speed where he could stop if need presented itself, no matter how sudden.    Defendant's claim that he was blinded by lights but intensifies his carelessness.    Blinded, as he claims, he took the chance of finding the way clear and ran into the pedestrians.    He was reckless in so doing. *Hammond* v. *Morrison,* 90 N. J. Law, 15 (100 Atl. 154) ; *Osbun* v. *De Young,* 99 N. J. Law, 284 (122 Atl. 809).    Whether the curve in the road prevented his lamps from lighting the way or the lights of the garage obscured his vision makes no difference.    If

he could not see where he was going it was imperative that 'he either stop or slow down to a point where he could stop if need to do so presented itself.

In *Hammond* v. *Morrison, supra,* defendant

"attempted to excuse himself upon the ground that just before the collision the street lights which he had passed were reflected into his eyes by the windshield of his car, so that 'he was unable to see in front of him."

The court said:

"His own story demonstrates his lack of care. No man is entitled to operate an automobile through a public street blindfolded. When his vision is temporarily destroyed in the way which the defendant indicated, it is his duty to stop his car, and so adjust his windshield as to prevent its interfering with his ability to see in front of him. The defendant, instead of doing this, took the chance of finding the way clear, and ran blindly into the trolley car behind which the decedent was standing. Having seen fit to do this, he cannot escape responsibility if his reckless conduct results in injury to a fellow being."

It was defendant's duty to anticipate the use of the roadway by pedestrians and to keep a lookout for them, and not to proceed if he had no view of the roadway. If his view was prevented by glare of lights, or because his lamps, by reason of the curve in the road, did not light the way he proceeded at his peril. An operator of an automobile along a public highway at night is bound to anticipate the presence of pedestrians upon it.

*Hatzakorzian* v. *Rucker-Fuller Desk Co.,* 197 Cal. 82 (239 Pac. 709, 41 A. L. R. 1027), was a case for damages, but many of the questions 'here presented were there decided and we, therefore, quote from the syllabus as given in A. L. R.:

"Under a statute requiring a person driving an automobile on a public highway to drive it in a careful and prudent manner and at a rate of speed not greater

than is reasonable and proper, having regard to the traffic and use of the highway, a driver is negligent if, on a dark night, with a dark roadbed, he continues to travel at 20 or 25 miles an hour after his vision is obscured by the glare of the lights on an approaching car, so that he could not see any object in front of him."

(See, also, to the same effect *Budnick* v. *Peterson*, 215 Mich. 678; *Gleason* v. *Lowe*, 232 Mich. 300; *Holsaple* v. *Supt's of Poor of Menominee Co.*, 232 Mich. 603.)

"Pedestrians have a right to travel anywhere upon a public highway, and it is not negligence for them to do so."

(See, also, *Gibbard* v. *Cursan*, 225 Mich. 311.)

"A pedestrian on a highway is under no legal duty to look back or watch behind to see whether or not he is in danger of being struck or run down by any vehicle approaching him from the rear."

(See, also, *Nordman* v. *Mechem*, 227 Mich. 86.)

"In the absence of evidence to the contrary, a pedestrian killed while walking on a public highway is presumed to have exercised at all times the requisite degree and amount of care for his own safety and preservation."

(See, also, *Petersen* v. *Lundin*, 236 Mich. 590.)

"One driving an automobile along a public highway at night is bound to anticipate the presence of pedestrians upon it."

(See, also, *Southall* v. *Smith*, 151 La. 967 [92 South. 402, 27 A. L. R. 1194]; 2 R. C. L. p. 1184.)

The common-law rule is that pedestrians have a right to walk anywhere upon a public highway. An exercise of this right is in no sense evidence of negligence. There is no rule of law requiring pedestrians on a public highway to walk with or against vehicular regulations. The law of the road is not strictly applicable as between vehicles and pedestrians, the latter having a right to walk on any part of the road. 29 C. J. p. 650.

In *Darus* v. *West*, 179 Wis. 279 (191 N. W. 506), the court stated:

"The argument of defendants' counsel is that pedestrians on a country highway must look to the rear at stated intervals of time or space to see if vehicles are coming and to keep out of their way.    We are aware of no such rule of law."

In *Marton* v. *Pickrell*, 112 Wash. 117 (191 Pac. 1101, 17 A. L. R. 68), an operator of an automobile claimed a pedestrian was guilty of negligence in walking on the side of the highway facing traffic.    The court, however, pointed out that the rule of the road had reference to vehicles only.    Pedestrians have an undoubted right to travel in any part of a public highway in the country.    Prudence may suggest the advisability of walking on the side facing traffic but no law counts it negligence to walk with the traffic.    If a pedestrian walks with the traffic he is in the very position where the operator of an automobile is bound to anticipate his presence.

In *Belliveau* v. *Bozoian,* 46 R. I. 83 (125 Atl. 82), it was stated:

"It is well established that pedestrians have in general, and under reasonable restrictions as to exercise of care by them, a right to travel anywhere upon a public highway, and it is negligence for a driver of a vehicle upon a public highway to recklessly run upon a pedestrian who is standing or walking with his back toward him."

In *Schock* v. *Cooling,* 175 Mich. 313, it was said:

"It is well settled by abundant authority that it is negligence for the driver of the conveyance, having ample space to pass a pedestrian on a highway, to so guide his vehicle as to strike the latter in passing."

In the case at bar defendant had ample space to pass the pedestrians.    Why did he strike them?    Because he did not see them in time to avoid doing so. Why did he not see them?    His vision was obscured by lights along the way and his lamps did not light the roadway because of a curve in the road.    The

emergency with which defendant was confronted, when his lights did disclose the pedestrians, arose out of his recklessness in driving at a speed of 20 miles an hour at a point where he had no view of the roadway.

The distinction between manslaughter and negligent homicide made by this legislation is important. The motor vehicle law establishes a rule of care to be observed and does not confine its mandate to acts wrong in and of themselves; it is regulatory of conduct calculated to save human life and the negligent homicide act exacts accountability for death occasioned by nonobservance of such precautionary provisions. *Festina lente,* or hasten slowly, a favorite saying of Augustus Caesar, would be a good thing for some operators of automobiles to recall when about to make a turn where lamps do not show the way, or lights on the street blind the vision. Ordinary care and consideration for the rights of others requires that inconsiderate haste be not indulged and that vigilance and care be exercised. Lamps to light the way are not only intended' to safeguard the operator in preserving his life and limb but as well to prevent his driving over persons walking in the highway. Pedestrians are not required to surrender the whole road to vehicles. Operators of vehicles are required to recognize the right of pedestrians in the highway and may not drive them into the ditch or brush them aside. Of course, pedestrians are under obligation to bring their use of the highway in reasonable accord with vehicular use.

It is stated in Elliott on Roads and Streets (4th Ed.), § 1086:

"All persons have a right to walk in a public highway as well as to ride or drive upon it; their rights are equal, and both footmen and drivers are required to exercise such reasonable care and prudence as the circumstances demand."

The foremost traveler, whether on foot or in a

vehicle, is not bound to give way beyond allowing reasonable room to pass.

If defendant had struck a vehicle at the same spot instead of pedestrians no one would question his culpability. The pedestrians were the foremost travelers and defendant was as reckless in running them down as he would have been had they been in a vehicle.

We have mentioned and quoted from cases involving manslaughter and also actions in tort to show the degree of care required by the law, under the circumstances shown by the testimony of defendant. His testimony and the law established his guilt. The pedestrians killed were, at the time, in the exercise of their rights and were guilty of no negligence. To apply the rules relative to common-law manslaughter would efface the statute. This may not be done. The statute is a valid exercise of the legislative power, and we have nothing to do with the question of whether it is wise legislation or otherwise. Under defendant's testimony there was no error committed by the court sufficient to justify a reversal.

The conviction should be affirmed.

SHARPE, C. J., and STEERE, J., concurred with WIEST, J.