PEOPLE v SEALY

Docket Nos. 71352, 71353. Submitted April 3, 1984, at Lansing.—
Decided July 9, 1984. Leave to appeal applied for.

Kenneth L. Sealy was convicted of involuntary manslaughter for
failure to provide his infant daughter with necessary medical
care, Eaton Circuit Court, Hudson E. Deming, J. Defendant was
placed on five years probation, with the first year to be served
in the county jail on a work-release program. Three weeks later
he was found guilty of violating the terms of his probation and
resentenced. Defendant appealed from both convictions and the
appeals were consolidated. Defendant alleges that the evidence
at trial was insufficient to support the conviction of involuntary
manslaughter and that he was denied the effective assistance of
counsel. *Held:*

1. A conviction of involuntary manslaughter requires a find-
ing of gross negligence. Gross negligence requires knowledge of
a situation requiring ordinary care to avert injury and the
omission of such care when to the ordinary mind it must be
apparent that the result is likely to prove disastrous to an-
other. The evidence at trial was sufficient for the jury to infer
that it would be apparent to the ordinary mind that failure to
seek medical care was likely to prove disastrous to the victim.

2. The evidence was sufficient to support the finding that the
defendant's failure to seek medical assistance was the proxi-
mate cause of the baby's death.

3. Defendant alleges that defense counsel erred by failing to

REFERENCES FOR POINTS IN HEADNOTES

[1] 21A Am Jur 2d, Criminal Law § 829.
Conviction of criminal offense without evidence as denial of due
process of law. 80 ALR2d 1362.
[2] 40 Am Jur 2d, Homicide §§ 88, 90.
Homicide: failure to provide medical or surgical attention. 100
ALR2d 483.
[3] 57 Am Jur 2d, Negligence § 99.
[4, 5] 21A Am Jur 2d, Criminal Law § 985.
Modern status of rules and standards in state courts as to adequacy
of defense counsel's representation of criminal client. 2 ALR4th
27.

raise defendant's religious beliefs as a defense. Such a defense was not raised as a matter of trial strategy. It might have conflicted with the defendant's testimony and theory that defendant believed the baby's condition was improving and that, therefore, the defendant lacked the knowledge of danger necessary for a finding of gross negligence. Defense counsel's choice of trial strategy was neither a sign of incompetence nor a serious mistake depriving defendant of effective assistance of counsel.

Affirmed.

1. CRIMINAL LAW — DUE PROCESS.

Due process in a criminal proceeding requires that the prosecutor introduce sufficient evidence which could justify a trier of fact in concluding that the defendant is guilty beyond a reasonable doubt.

2. HOMICIDE — INVOLUNTARY MANSLAUGHTER — GROSS NEGLIGENCE.

A conviction of involuntary manslaughter based on a defendant's failure to seek medical assistance for the victim requires proof beyond a reasonable doubt of four elements: (1) the existence of a legal duty; (2) the capacity, means and ability to perform the duty; (3) the wilful neglect or refusal to perform the duty; and (4) death as a direct and immediate consequence of the failure to act; the conviction must be supported by a finding that the defendant was grossly negligent.

3. NEGLIGENCE — GROSS NEGLIGENCE.

A finding of gross negligence requires proof of (1) knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another, (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand, and (3) the omission to use such care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another.

4. CRIMINAL LAW — ASSISTANCE OF COUNSEL.

The test for determining whether a criminal defendant was denied effective assistance of counsel consists of a two-part inquiry: (1) whether defense counsel performed at least as well as a lawyer with ordinary training and skill in the criminal law and conscientiously protected his client's interests; and (2) whether defense counsel made a mistake so serious that, but for the mistake, defendant would have had a reasonably likely chance for acquittal.

5. APPEAL — CRIMINAL LAW — ASSISTANCE OF COUNSEL — TRIAL
    STRATEGY.
    Generally, the Court of Appeals is reluctant to substitute its
    judgment for that of defense counsel in matters of trial strat-
    egy; a difference of opinion as to trial tactics does not amount
    to ineffective assistance of counsel.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Paul F. Berger,* Prosecuting Attorney, and *Sherman Mowbray,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Ronald J. Bretz),* for defendant on appeal.

Before: DANHOF, P.J., and R. B. BURNS and GRIBBS, JJ.

PER CURIAM. Defendant was convicted by a jury of involuntary manslaughter. MCL 750.321; MSA 28.553. He was sentenced to five years probation, with the first year to be served in the county jail on a work-release program. Three weeks later defendant was found guilty of violating the terms of his probation. He was resentenced to the same probationary term without the work-release program. Defendant appeals his conviction as of right, raising claims of insufficiency of the evidence and ineffective assistance of counsel. We affirm.

Defendant's conviction arose out of defendant's failure to seek medical assistance prior to the death of his two-week-old daughter. The baby was born at home on February 27, 1982, and fell ill about one week after birth. The baby appeared yellow, and was fed with an eye dropper because she was too weak to be breast-fed.

On Tuesday, March 9, the baby stopped breathing and had no heartbeat. Defendant's sister, Sharon Carney, administered external heart mas-

sage and mouth-to-mouth resuscitation and revived the baby. When defendant arrived at home, Carney told him what had happened. That evening and night, defendant's sister administered mouth-to-mouth resuscitation at least five times and defendant witnessed four or five of these resuscitations.

On Wednesday morning, the baby convulsed and expelled a black-brown substance from her nose and mouth. Defendant cleared out the substance and gave the baby mouth-to-mouth resuscitation. These convulsive episodes occurred five to seven times and defendant repeated his resuscitation procedures. By Wednesday evening the baby was having hourly episodes. Defendant again administered mouth-to-mouth resuscitation and cleared the baby's breathing passages. The final episode occurred around midnight, and the baby could not be resuscitated. The next day, defendant brought the baby's body to the fire department so that a paramedic could determine whether the baby was actually dead.

Both defendant and his sister had a car and there were two telephones in defendant's apartment. Defendant did not call for medical aid or take the baby out of the apartment to obtain medical assistance during the baby's illness.

Defendant testified that he did not summon medical assistance because he believed the baby's condition was improving. He testified that he believed the expelled substance was something the baby might have swallowed in the womb or during birth. Lieutenant Deer of the Eaton County Sheriff's Department testified that defendant told him that the baby had spit up blood before it died.

Medical testimony established that the baby's death was caused by pneumonia complicated by

dehydration. The baby was jaundiced and suffered from kernicterus, a brain disease resulting from jaundice. The pathologist who performed the autopsy testified she could not predict if the baby could have been saved if given medical care when it first stopped breathing. A general practitioner testified that there was a distinct chance, more than 50%, that the baby could have been saved if treated with antibiotics and a respirator. He testified that deaths of newborns from pneumonia were unusual.

Defendant contends that the evidence at trial was insufficient to support his conviction for involuntary manslaughter. Due process requires that the prosecutor introduce sufficient evidence which could justify a trier of fact in concluding that defendant is guilty beyond a reasonable doubt. *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979), *cert den* 449 US 885; 101 S Ct 239; 66 L Ed 2d 110 (1980). To convict a defendant of involuntary manslaughter for his failure to seek medical assistance, the following elements have to be proven beyond a reasonable doubt: (1) legal duty; (2) capacity, means and ability to perform the duty; (3) wilful neglect or refusal to perform the duty; and (4) death as a direct and immediate consequence of a failure to act. *People v Lynch,* 47 Mich App 8, 16-17, fn 7; 208 NW2d 656, *lv den* 390 Mich 777 (1973); *People v Beardsley,* 150 Mich 206; 113 NW 1128 (1907).

To convict of involuntary manslaughter, a defendant must have been grossly negligent. *Wayne County Prosecutor v Recorder's Court Judge,* 117 Mich App 442, 446; 324 NW2d 43 (1982); *People v Ogg,* 26 Mich App 372, 386; 182 NW2d 570 (1970). Gross negligence requires:

"1. Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another.

"2. Ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand.

"3. The omission to use such care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another." *People v Orr,* 243 Mich 300, 307; 220 NW 777 (1928); CJI 16:4:08.

Defendant contends that the evidence was insufficient to prove him grossly negligent beyond a reasonable doubt. At most, defendant argues, only ordinary negligence was shown.

Defendant points out the distinction between ordinary and gross negligence which was set out in *People v Campbell,* 237 Mich 424, 429; 212 NW 97 (1927): "Ordinary negligence is based on the fact that *one ought to have known* the results of his acts; while gross negligence rests on the assumption that *he did know* but was recklessly or wantonly indifferent to the results." (Emphasis added.) Defendant argues that the evidence did not prove that defendant actually *knew* the results of his failure to act. He testified at trial that he did not believe the baby was in danger of dying and that he thought the baby's condition was improving. Defendant argues that any evidence showing that he *should have known* of the consequences of his failure to summon medical assistance could only support a finding of ordinary negligence under the *Campbell* definition.

Although *Campbell* would appear to support defendant's proposition, the language from *Campbell* was taken from the Court's general discussion of negligence, and the Court noted that "(t)erms and classification of negligence are confusing". *Campbell, supra,* p 429. Furthermore, *People v Orr, supra,* decided after *Campbell,* set out a clear

definition and test for gross negligence. Under *Orr,* as discussed above, gross negligence requires knowledge of a situation requiring ordinary care to avert injury and omission of such care when *to the ordinary mind it must be apparent* that the result is likely to prove disastrous to another. *Orr, supra,* p 307.

In this case, the evidence presented at trial met the *Orr* test for gross negligence. Defendant had knowledge that the baby was seriously ill. He knew that the baby's heartbeat and breathing had ceased and he administered mouth-to-mouth resuscitation 10 to 15 times in a two-day span. There was also testimony that defendant told Lieutenant Deer that the baby had spit up blood. From these circumstances, the jury could infer that it would be apparent to the ordinary mind that failure to seek medical assistance was likely to prove disastrous to the baby.

Defendant further argues that the medical expert's testimony did not establish that the baby could have been saved at the last stages of the illness and thus failed to prove proximate cause. He contends that, even if his initial failure to summon medical help was ordinary negligence which crossed the line into gross negligence when the baby's condition worsened, the prosecution did not present sufficient evidence that defendant's failure to seek medical attention at the last stages was the proximate cause of the baby's death. Defendant points to the pathologist's testimony that she could not predict whether the baby could have been saved after the initial cessation of heartbeat and breathing. However, the pathologist did not testify that the baby could *not* have been saved after the initial episode. Furthermore, another medical expert at trial testified that the

baby's chances were better than 50/50 after the first episode, although her chances of surviving decreased as death approached. Both experts opined that there was available treatment for the baby's illness, and one of them testified that the death of a baby from pneumonia was unusual.

Viewed in the light most favorable to the prosecution, *Hampton, supra,* the evidence presented at trial was sufficient for the jury to find beyond a reasonable doubt that defendant's failure to seek medical attention was the proximate cause of the baby's death.

Defendant further argues that he was denied effective assistance of counsel because defense counsel failed to raise defendant's religious beliefs and MCL 722.634; MSA 25.248(14) as a defense. The statute provides:

> "A parent or guardian legitimately practicing his religious beliefs who thereby does not provide specified medical treatment for a child, for that reason alone shall not be considered a negligent parent or guardian. This section shall not preclude a court from ordering the provision of medical services or nonmedical remedial services recognized by state law to a child where the child's health requires it nor does it abrogate the responsibility of a person required to report child abuse or neglect."

Defendant contends this portion of the child protection law is applicable to a criminal prosecution.

The test for determining whether defendant was denied effective assistance of counsel consists of a two-fold inquiry: (1) *Constitutional 6th Amendment:* did defense counsel perform at least as well as a lawyer with ordinary training and skill in criminal law and conscientiously protect his client's interests? (2) *Non-constitutional "serious mis-*

*take"*: did defense counsel make a mistake so serious that, but for the mistake, defendant would have had a reasonably likely chance for acquittal? *People v Garcia*, 398 Mich 250; 247 NW2d 547 (1976), *reh den* 399 Mich 1041 (1977).

At trial, counsel based his defense on the prosecution's failure to prove the elements of gross negligence, focusing on defendant's lack of knowledge that the baby was dying. Defense counsel specifically sought to prevent injection of the religious issue at trial. For example, in the midst of trial, when one of the jurors sent two notes to the court asking about defendant's religious affiliations and the impact of such affiliation on the case, both counsel requested the court not to respond to the inquiries. Defense counsel then rejected the court's offer to remove the juror. In addition, defense counsel moved to delete portions of defendant's statement to Detective Woods in which defendant spoke of his faith in God's healing powers. Counsel argued that raising religious reasons for defendant's failure to seek medical assistance would be detrimental to defendant's position at trial that defendant did not summon aid because he thought the baby was improving.

The record reflects, and defendant agrees, that his counsel's failure to present a religious beliefs defense was not inadvertent, but a matter of trial strategy. Generally, this Court is reluctant to substitute its judgment for that of the defense counsel in matters of trial strategy, and a difference of opinion as to trial tactics does not amount to ineffective assistance of counsel. *People v Peery,* 119 Mich App 207, 216; 326 NW2d 451 (1982), *lv den* 417 Mich 1018 (1983); *People v Harris,* 133 Mich App 646; 350 NW2d 305 (1984).

Our review of the record reveals that defense

counsel competently and conscientiously defended his client, and that he did not commit a serious mistake by refusing to raise defendant's religious beliefs. Counsel's choice of strategy was based on a legitimate fear that such a defense could conflict with defendant's testimony and theory that defendant did not summon medical assistance because he believed the child was improving. The pursuit of both a religious and lack of knowledge defense, while perhaps not in direct conflict, could undermine the strength of a single defense. Thus, counsel's choice of trial strategy was neither a sign of incompetence nor a serious mistake depriving defendant of effective assistance of counsel.

Affirmed.