PEOPLE v MOYE

Docket No. 132740. Submitted April 20, 1992, at Grand Rapids.
    Decided May 19, 1992, at 9:05 A.M. Leave to appeal sought.

Karen D. Moye was convicted by a jury in the Calhoun Circuit
    Court, Ronald A. Lebeuf, J., of involuntary manslaughter and
    was sentenced to ten to fifteen years' imprisonment. The defen-
    dant, following a night of cocaine use, had given birth prema-
    turely to an infant son while she was seated on a toilet, seeking
    relief from labor pains that she had mistaken for stomach
    cramps, and the child drowned in the toilet. The defendant
    appealed.

    The Court of Appeals *held:*

    1. The prosecution failed to establish that the defendant
    knew that her baby had been born alive. Thus, the prosecution
    failed to prove that the defendant knew of the existence of a
    situation that required her to use ordinary care to prevent
    injury to the child. Reversal of her conviction of involuntary
    manslaughter is required.

    2. The trial court erred in allowing the jury to deliberate
    with regard to a charge of second-degree murder in the absence
    of evidence that the defendant intended to kill or cause great
    bodily harm to the child.

    3. The trial court did not err in refusing to impanel a new
    jury after the prosecution used a peremptory challenge to
    exclude the sole black person in the jury pool. The defendant
    failed to establish a prima facie case of intentional discrimina-
    tion, and the prosecution offered a nondiscriminatory reason
    for the challenge.

    4. The trial court did not abuse its discretion in allowing a
    pathologist to testify as an expert despite the pathologist's
    limited credentials. Whether a witness' expertise is as great as
    that of others in the field is relevant to the weight rather than
    the admissibility of the testimony.

    5. The trial court did not err in ruling that evidence of the

REFERENCES
Am Jur 2d, Homicide §§ 91-101; Negligence §§ 243-254.
See the Index to Annotations under Degree and Standard of Care;
    Negligence; Negligent Homicide.

defendant's voluntary intoxication was irrelevant and inadmissible.

6. The trial court erred in refusing to instruct the jury that, in order to convict the defendant of involuntary manslaughter, it had to find beyond a reasonable doubt that the defendant knew that her baby had been born alive.

7. The trial court abused its discretion at sentencing by assessing points against the defendant for exploitation of the victim's vulnerability. Points for this offense variable may be assessed only where there is evidence of manipulation of the victim for selfish or unethical purposes. There was no such evidence in this case.

8. The defendant's sentence, although within the sentencing guidelines as the maximum penalty for involuntary manslaughter, is nonetheless disproportional to this particular offense, which did not warrant the most severe penalty.

Reversed.

1. HOMICIDE — INVOLUNTARY MANSLAUGHTER — GROSS NEGLIGENCE.

A conviction of involuntary manslaughter based on gross negligence requires proof beyond a reasonable doubt of the existence of a legal duty; the capacity, means, and ability to perform the duty; the wilful neglect or refusal to perform the duty; and death as a direct and immediate consequence of the failure to act.

2. NEGLIGENCE — GROSS NEGLIGENCE.

A finding of gross negligence requires proof of knowledge of a situation requiring the exercise of ordinary care to avert injury to another; having the capacity, means, and ability to avoid the resulting harm by the use of ordinary care; and failure to use ordinary care when to the ordinary mind it must be apparent that harm would result from such failure.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *Conrad Sindt,* Prosecuting Attorney, and *Ronald S. Pichlik,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Gail Rodwan*), for the defendant on appeal.

Before: HOOD, P.J., and SHEPHERD and K. N. SANBORN,* JJ.

PER CURIAM. Initially charged with open murder, defendant was tried by a jury on a charge of second-degree murder and convicted of involuntary manslaughter for the death of her newborn son. MCL 750.321; MSA 28.553. She was sentenced to ten to fifteen years' imprisonment, and appeals as of right, raising numerous issues. We reverse.

The only explanation for the events leading up to the infant's death was defendant's statement to the police. She indicated that after smoking crack cocaine the previous evening, she awakened suffering from what she thought were cramps. She went to use the bathroom and instead gave birth while on the toilet stool. Defendant thought she was only 6½-months pregnant.

The baby apparently fell headfirst into the water. Defendant told the police that she heard a "small gurgle" or groan, but failed to check the baby or pull it out of the water. Defendant did immediately call an ambulance. The gestation period of the baby was approximately 8 to 8½ months. It was dead by the time an emergency medical technician examined it.

The main issues in the case were whether the baby was born alive and whether the defendant knew that he was born alive and therefore owed him a duty of care.

In order to be convicted of involuntary manslaughter under these facts, the prosecution had to prove beyond a reasonable doubt (1) the existence of a legal duty; (2) that defendant had the capacity, means, and ability to perform the duty; (3) that she wilfully neglected or refused to perform

---

* Former circuit judge, sitting on the Court of Appeals by assignment.

the duty; and (4) that the death of her son was the direct and immediate consequence of her failure to perform her duty. *People v Giddings,* 169 Mich App 631, 634-635; 426 NW2d 732 (1988); *People v Sealy,* 136 Mich App 168, 172; 356 NW2d 614 (1984). Wilful neglect, or gross negligence, is defined as (1) knowledge that a situation existed requiring the use of ordinary care to prevent injury; (2) having the capacity, means, and ability to avoid the harm by the use of ordinary care; and (3) failing to use ordinary care where it would have been apparent to an ordinary mind that harm would result from such failure. *Giddings, supra* at 635; *Sealy, supra* at 172-173. Defendant argues that there was insufficient evidence that the baby was born alive and that, therefore, there was no legal duty. She also argues that there was insufficient evidence that she knew that the baby was born alive and that, therefore, there was no gross negligence. After an exhaustive examination of the record, including a review of the lengthy testimony of three pathologists, we agree with defendant's second contention.

The pathologist who conducted the autopsy testified that the child's lungs floated. The pathologist who testified for the defendant agreed that the float test was the best evidence of a live birth. A third pathologist testified that he concluded that it was a live birth from the microscopic examination of lung-tissue slides. There was sufficient evidence to conclude beyond a reasonable doubt that the baby was born alive.

However, the only evidence of defendant's knowledge that the baby was born alive was her admission that she heard a "small gurgle." All three pathologists testified that this was not conclusive evidence of a live birth and that making that determination in this case had been ex-

tremely difficult. We must therefore conclude that there was insufficient evidence that defendant knew of the existence of a situation that required the use of ordinary care, that is, that her baby had been born alive.

Defendant next argues that there was insufficient evidence to justify sending the second-degree murder charge to the jury. Again, after carefully reviewing the record, we agree that there was insufficient evidence that she acted with wilful and wanton disregard that death or great bodily harm would result, much less that she had the intent to kill or to cause great bodily harm. *People v Lewis,* 168 Mich App 255, 268, 270; 423 NW2d 637 (1988). This error is in itself independent grounds for reversal because, "where a jury is permitted consideration of a [higher] charge unwarranted by the proofs there is *always* prejudice because a defendant's chance of acquittal on any valid charge is substantially decreased by the possibility of a compromise verdict." *People v Vail,* 393 Mich 460, 464; 227 NW2d 535 (1975) (emphasis added); see also *People v Jolly,* 193 Mich App 192, 199, n 4; 483 NW2d 679 (1992).

Defendant next argues that the trial court erred in not impaneling a new jury after the prosecutor used a peremptory challenge to exclude the only black person in the venire. We disagree. Defendant failed to establish a prima facie case of intentional discrimination. Additionally, the prosecutor's explanation, that the person was excluded because he knew defendant and her family, was racially neutral. See *People v Barker,* 179 Mich App 702, 705-706; 446 NW2d 549 (1989), aff'd 437 Mich 161; 468 NW2d 492 (1991) (different issue); see also *People v Williams,* 174 Mich App 132, 137; 435 NW2d 469 (1989).

Defendant's fourth assignment of error concerns

whether the court properly qualified as an expert the pathologist who performed the autopsy. The requirement under MRE 702 that an expert be qualified by "knowledge, skill, experience, training, or education" is a broad one, and a proposed expert witness should not be required to satisfy an overly narrow test of his own qualifications. Whether a witness' expertise is as great as that of others in the field is relevant to the weight rather than the admissibility of the testimony and is a question for the jury. *People v Whitfield,* 425 Mich 116, 122-124; 388 NW2d 206 (1986) (relying on *United States v Barker,* 553 F2d 1013, 1024 [CA 6, 1977] [McCree, J.]). The trial court did not abuse its discretion in qualifying the pathologist as an expert despite his limited credentials.

Defendant next challenges the trial court's refusal to allow her to introduce expert testimony that the use of cocaine dulled her senses and that she therefore did not realize that she was in labor. Because voluntary intoxication such as drug use is not a defense to general-intent crimes such as manslaughter and second-degree murder, we need not reach the issue whether defendant's failure to file a notice of diminished capacity was proper grounds for the exclusion of this evidence. *People v Langworthy,* 416 Mich 630, 651; 331 NW2d 171 (1982); see also MCL 768.20a; MSA 28.1043(1); MCL 768.21; MSA 28.1044. However, after a careful review of the record, we find that defendant's lack of knowledge that she was in labor was relevant only to her mental state and, because her mental state could not be refuted by evidence of voluntary intoxication, the evidence was properly excluded on the ground of relevance.

Defendant's sixth assignment of error concerns the trial court's refusal to specifically instruct the jury that, to convict her of involuntary manslaugh-

ter, it had to find beyond a reasonable doubt that defendant knew that her baby had been born alive. We agree. The court instructed the jury that defendant must be found to have known that a situation existed requiring the use of ordinary care to prevent injury. We believe that this is a case where, as in cases involving the use of deadly force to fend against rape, the traditional instructions given do not totally and accurately present the crucial issue to the jury. See *People v Barker,* 179 Mich App 702, 707-709; 446 NW2d 549 (1989) (holding that instruction stating that deadly force may be used to prevent serious bodily harm was sufficient), aff'd 437 Mich 161, 163-164; 468 NW2d 492 (1991) (holding that an instruction must specifically state that deadly force may be used to prevent rape but finding the error harmless). In this case, the instruction allowed the jury to convict defendant if it found that giving birth was a situation requiring the use of ordinary care, even if it found that defendant did not know that her baby had been born alive. Given the facts of this case, we cannot deem this error harmless. This is an additional ground for reversal.

Defendant lastly argues that the sentencing court abused its discretion in assessing her points for exploitation of the victim's vulnerability and that her sentence is not proportional to the crime. We agree on both counts. Were we not reversing on other grounds, we would require resentencing. The sentencing guidelines define exploitation as "manipulation of the victim for selfish or unethical purposes." Therefore, although the sentencing court's observation that the child was found face down in a toilet is accurate, assessing points for this variable was an abuse of discretion because there was no evidence of manipulation on the record.

Under the sentencing court's scoring of the exploitation variable, defendant's sentence of ten to fifteen years would fall within the guidelines and therefore be presumptively proportional even though it is the harshest possible under the statute. See *People v Milbourn*, 435 Mich 630, 658-659; 461 NW2d 1 (1990); *People v Broden*, 428 Mich 343, 354-355; 408 NW2d 789 (1987). Nevertheless, the circumstances of defendant's crime—even as scored by the lower court—did not fall in the highest category for her crime. In light of the facts, we believe that this is the unusual case where a sentence, even though falling within the guidelines, is not proportional because defendant's conduct does not "rise to a level of seriousness that warrants the most severe penalty the law can inflict for that crime." *Milbourn, supra* at 654, 661, 667.

Reversed.