PEOPLE *v.* SAUER.

1. HOMICIDE — INSTRUCTIONS — PRESENTATION OF DEFENDANT'S THEORY.

On the trial of an information for murder in killing an officer acting under a writ of replevin, in which respondent claims that the gun was discharged unintentionally while he was trying to frighten deceased off the premises, and when deceased was not acting under the writ, an instruction that the pointing of a gun in the air is not an unlawful act, and that defendant had a right to take a gun into the field and point it in the air, if he did not do so for the purpose of obstructing or resisting the officer, and that the discharging of the gun was not unlawful, unless done for the same purpose, or used in such a manner as to amount to a disregard for human life, is sufficiently favorable to defendant under his theory of the case.

2. SAME—EVIDENCE—PRESUMPTIONS.

Where, in a prosecution for the murder of a constable who came to respondent's premises to execute a writ of replevin, it appears from respondent's own testimony that the writ existed, it is presumable that deceased was acting lawfully, though the writ is not introduced in evidence.

Exceptions before judgment from St. Clair; Law, J. Submitted February 15, 1906. (Docket No. 217.) Decided March 5, 1906.

William Sauer was convicted of manslaughter. Affirmed.

*Joseph Walsh*, for appellant.

*Alex. Moore*, Prosecuting Attorney, for the people.

MONTGOMERY, J. The respondent was convicted of manslaughter and asks for a reversal on the ground of error in the charge of the court. The facts, briefly stated, are that the respondent was living at home with his

father, mother, and two brothers on a farm on St. Clair Flats. A quantity of logs had drifted upon the land of the elder Sauer. One Chris. Smith claimed title to the logs and sent out a writ of replevin for 16 of them. Accompanied by an officer, Constable Moore, he went to the premises. Some of the logs were found in what is called the lower field. After some parley, respondent consented that these be taken. Smith, the constable, and the teamsters then started for the upper field. The defendant warned them off, and, when they persisted, came into the field with a loaded gun. The gun was discharged, killing Constable Moore instantly. The jury must have found that the gun was discharged accidentally, and while the respondent, not intentionally pointing the gun at Moore, was engaged in the attempt to frighten the parties away. The respondent claimed in his testimony that, when the parties were in the lower field, Smith stated that the logs there were those which the writ called for, and it was contended that, as this was so, the writ had spent its force, and that, when the parties were in the upper field, the constable had no greater right than a private person. It seems not to have been disputed that the writ called for 16 logs. Nor was it disputed that less than 16 logs were taken in the lower field. The respondent appears to have taken no means of ascertaining from Constable Moore his intentions or purposes, but does claim that Smith was basing his demand for the logs in the upper field on his ownership rather than asserting any right under the writ.

The circuit judge charged the jury as follows:

"I instruct you that the pointing of a gun in the air is not an unlawful act, and I charge you that the respondent would have the right to take a gun out into the field to the east of the house and to point the same in the air, so long as in doing so he did not take it there for the purpose of obstructing or resisting the officer, Elisha Moore, and did not use it for that purpose. I instruct you that the discharging of the gun, by respondent, in the air, is not an unlawful act, and I charge you that the respondent would have the right to take the gun out into the field east

of the house and discharge the same in the air, so long as by doing so he did not take it there for the purpose of obstructing or resisting the officer, Elisha Moore, and did not use it for that purpose and did not use it in such manner as to amount to a reckless disregard of human life by so using it. The respondent, under the law, had a right to take the gun with him into the field where the shooting occurred, so long as by so doing he did not take it there for the purpose of obstructing and resisting the officer, Elisha Moore, and did not use it for that purpose, and to carry said gun in his hands and to point the same in the air, so long as he did not have the gun there for the purpose of obstructing the officer or resisting the officer, but he would not have the right to knowingly point said gun in the direction of any person."

We think this charge sufficiently recognized the defendant's theory in so far as it was entitled to consideration. The writ was still in the officer's hands, and, whatever may have occurred in the lower field, so long as the logs called for had not in fact been secured, the writ had not spent its force. If, however, the jury were satisfied that the officer was not, at the time he was shot down, acting under the writ, the charge fully protected the rights of the accused.

It is said the writ was not introduced in evidence. It appears by respondent's own testimony that such a writ existed, and the presumption is that the officer was acting lawfully. *Love* v. *Wood*, 55 Mich. 451.

The conviction is affirmed.

MCALVAY, GRANT, BLAIR, and MOORE, JJ., concurred.