PEOPLE *v.* LAYMAN.

Automobiles—Manslaughter—Intoxicating Liquor.
Conviction of involuntary manslaughter by operation of an automobile while defendant was under the influence of intoxicating liquor is affirmed.

Appeal from Recorder's Court of Detroit, Traffic and Ordinance Division; Murphy (George T.), J. Submitted June 12, 1941. (Docket No. 61, Calendar No. 41,422.) Decided September 2, 1941.

James Layman was convicted of involuntary manslaughter by the operation of an automobile. Affirmed.

*Edward N. Barnard,* for appellant.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *William E. Dowling,* Wayne Prosecuting Attorney, and *Henrietta E. Rosenthal* and *Glenn C. Hague,* Assistant Prosecuting Attorneys, for the people.

SHARPE, C. J. Defendant, James Layman, was convicted of the offense of involuntary manslaughter by the operation of an automobile. The information charged that James Layman "did by the operation of a vehicle, to wit, an automobile, in a careless, reckless and negligent manner, wilfully and wantonly, cause the death of James Barnhard."

In the city of Detroit, Pembroke avenue runs east and west and Wyoming avenue runs north and south. About 1:30 a.m., on December 24, 1939, defendant, driving a Dodge car, was traveling west on Pembroke avenue approaching Wyoming avenue. At the same time, James Barnhard was a passenger in his own car which was being driven by Wilmur Newman north on Wyoming avenue approaching Pembroke avenue. At this time the weather was clear and cold and the pavement dry. Barnhard's car and defendant's car collided in or near the intersection of the above streets. As a result of the collision, Barnhard's car proceeded approximately 70 feet north of the center of the intersection on Wyoming avenue where it collided with another car which was headed south and which had stopped. In the collision, Barnhard suffered injuries from which he later died.

During the trial of the cause, the prosecuting attorney introduced evidence from three police officers that after the accident defendant was under the influence of intoxicating liquor to such an extent that

his ability to drive a car would be affected and impaired. Three other witnesses testified that they could smell alcoholic liquor upon defendant's breath.

Newman, the driver of Barnhard's car, testified that he first saw defendant's car after he (Newman) had entered the intersection, but that defendant was traveling so fast that he (Newman) could not stop in time to avoid the collision. Another witness testified that he watched defendant's car from the time it was one and a half blocks east of the intersection and that it was traveling 55 miles per hour and at the rate it was going it would be impossible to stop.

Defendant appeals and contends that the sentence for involuntary manslaughter was contrary to law and if any crime was committed, it was one of negligent homicide; that the verdict was against the great weight of the evidence; that prejudicial error was committed in the argument of the prosecuting attorney and the charge of the court; that the court erred in charging the jury as to what constitutes the offense of involuntary manslaughter; and that counsel for defendant was unduly restricted in his cross-examination of one of the peoples' witnesses.

Defendant relies upon *People* v. *Orr*, 243 Mich. 300, in support of his claim that the sentence of involuntary manslaughter was contrary to law. In the above case the conviction was set aside and a new trial granted because of the failure of the trial court to instruct the jury on the burden of proof, but we said in an advisory capacity that:

"The charge of manslaughter is here without evidential support. 26 Michigan Law Review, 820. Before defendant may be found guilty of wilfulness, or of wantonness and recklessness, which in effect are wilfulness, three necessary elements must be

found according to note 69 L. R. A. 516; and text 20
R. C. L. p. 145, heretofore approved by this court:

"(1)   Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another.

"(2)   Ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand.

"(3)   The omission to use such care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another." (p. 307)

In *People* v. *Townsend,* 214 Mich. 267, 273 (16 A. L. R. 902), we said:

"It is gross and culpable negligence for a drunken man to guide and operate an automobile upon a public highway, and one doing so and occasioning injuries to another, causing death, is guilty of manslaughter. It was unlawful for defendant to operate his automobile upon the public highway while he was intoxicated; made unlawful by statute, and wrong in and of itself, and it was criminal carelessness to do so and he is guilty of manslaughter, provided the death of Agnes Thorne was a proximate result of his unlawful act."

The trial court having in mind the above citation instructed the jury as follows:

"The defendant, James Layman, is charged with the offense known as involuntary manslaughter with a motor vehicle.   Involuntary manslaughter, under the common law, is defined as follows: Where a person in the doing of an act, which act in itself is unlawful, but not amounting to a felony, kills another person by accident, such person is guilty of involuntary manslaughter.   For instance, the driving of an automobile while under the influence of intoxicating liquor is in itself a misdemeanor, but if while driving that automobile while under the influence of in-

toxicating liquor a death results then that constitutes the offense known as involuntary manslaughter.''

The above instruction is in harmony with what we said in *People* v. *Townsend, supra.*

The trial court also gave the following instructions:

''Gross negligence means something more than ordinary negligence and something more than heedlessness, thoughtlessness and inattention. It means wantonness or disregard of the consequences which may result or ensue and an indifference or reckless disregard to or for the rights of others that is equivalent to a criminal intent, it goes back to the same proposition I explained to you originally. * * *

''Before a defendant may be found guilty of wilfulness or of wantonness and recklessness, three necessary elements must be found:

''First: Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another.

''Second: Ability to avoid a resulting harm by ordinary care and diligence in the use of the means at hand.

''Third: The omission to use such care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is likely to prove disastrous.

''To warrant a conviction in this case under the charge of involuntary manslaughter, the negligence of the accused, if there was negligence on his part, must have been the proximate cause of the death of the deceased, and must have been characterized by such a degree of culpable negligence as to amount to gross negligence, and this is the question for you to decide. * * *

''In order to find the defendant guilty of involuntary manslaughter in this case, you must * * * determine from the testimony whether or not the

defendant was guilty of gross and culpable negligence in the operation of his motor vehicle and that said gross negligence in the operation of such motor vehicle was the proximate cause of the death of the deceased.

"Proximate cause means the direct cause, and not some independent or intervening cause. In other words, did the deceased, James Barnhard, die of injuries growing out of the accident, and not some independent or intervening cause, and you must find that."

These instructions follow the trend of thought outlined in the *Orr Case* and are not in discord with what we said in that case.

Under the test as laid down in the *Townsend Case*, a person may be convicted of involuntary manslaughter if he operates an automobile upon the public highway while under the influence of intoxicating liquor and death results to another person as a result of such operations. In the case at bar, there was evidence from which a jury could find that defendant was operating his car while in an intoxicated condition which resulted in the death of Barnhard. The trial court also instructed the jury upon the question of gross negligence as above noted. These instructions were taken from what we said in the *Orr Case*. Under the test as laid down in that case, defendant as a driver on the highway had knowledge of a situation requiring the exercise of ordinary care and diligence to avoid injury to another. He had the ability to avoid the resulting harm by the use of ordinary care and diligence in the use of his automobile and there was evidence that defendant was intoxicated and driving at the rate of 55 miles per hour as he was entering the intersection. From such testimony, a jury could determine that defendant failed to use such care and

diligence to avert the threatened danger when to an ordinary mind it must have been apparent that the result was likely to prove disastrous to another.

There was evidence from which a jury could determine that defendant was guilty under either theory as outlined by the trial court. The weight to be given to the evidence introduced is the problem of the jury and we cannot say that its verdict was contrary to the law of evidence in criminal cases.

It is urged that the prosecutor belittled the effect of good character in a criminal case by asking the jury, "He put on a number of character witnesses; what they have to do with an automobile accident, I don't know." The effect of the prosecutor's remarks must be considered in connection with the charge of the court. In his charge to the jury the court gave the following instructions:

"You are to base your verdict on what you believe the facts to be as you heard the testimony from the witness stand, together with the law as the court will give it to you, and upon the combination of the two you will render your verdict. * * *

"You should arrive at your verdict by determining all the surrounding circumstances and conditions, and the facts as they existed at the time of the alleged accident."

Defendant also urges that the following instruction was error:

"On the other hand, if the people have proved the defendant guilty beyond a reasonable doubt, then his previous good character will avail him little and you will return a verdict of guilty."

On numerous occasions we have said that a part of an instruction cannot be relied upon as error without considering all of the instructions given

upon the particular subject.  In the case at bar the
trial court also instructed the jury as follows:

"There has been testimony as to the prior good
character of the defendant.  I charge you, members
of the jury, that a man's good character may be his
greatest asset, and particularly so when he is
charged with a crime.  If you find that the previous
good character of the defendant is such that it would
create in your mind a reasonable doubt as to his
having committed the offense charged, you will re-
solve that reasonable doubt in favor of the defend-
ant and acquit him.  On the other hand, if the people
have proved the defendant guilty beyond a reason-
able doubt, then his previous good character will
avail him little and you will return a verdict of
guilty."

In our opinion the above instruction of the trial
court did not take from the jury the right to decide
the weight to be given to character evidence.  Nor
were they informed that such evidence could be dis-
regarded.  Moreover, such instruction corrected
whatever error there may have been in the remarks
of the prosecutor.

It is also urged that the defendant was unduly
restricted in his cross-examination of one of the
people's witnesses.  The witness had started an
action against both Newman and the defendant for
damages growing out of the collision.  It appears
that the witness refused to testify that the declara-
tion filed in that action blamed both, saying, "I know
nothing about that."  On the following day, defend-
ant's counsel again asked the same question.  Ob-
jection was made by the prosecutor that the ques-
tion had been asked before and answered.  This ob-
jection was sustained by the court.  It is the rule
that the extent of the cross-examination of a witness
is left to the sound discretion of the trial judge.  In

the case at bar the question had been answered by the witness. We cannot say that it was prejudicial error to refuse further cross-examination of this particular witness.

The record satisfies us that the defendant had a fair trial. There was no prejudicial error committed and the judgment is affirmed.

BUSHNELL, CHANDLER, and STARR, JJ., concurred with SHARPE, C. J. BOYLES, NORTH, WIEST, and BUTZEL, JJ., concurred in the result.