## PEOPLE v FLORIDA

1. HOMICIDE—MANSLAUGHTER—INVOLUNTARY MANSLAUGHTER—ELEMENTS OF OFFENSE—INSTRUCTIONS TO JURY—PREJUDICE.

The elements of involuntary manslaughter are: (1) knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another, (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand, and (3) the omission to use such care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another; manifest prejudice results to a defendant charged with causing the death of another by operation of his automobile where a court fails to include these elements of the offense of involuntary manslaughter in its charge to the jury.

2. NEGLIGENCE—GROSS NEGLIGENCE—ASSUMPTIONS—RECKLESS OR WANTON INDIFFERENCE.

A finding that a person is guilty of gross negligence rests on the assumption that the person knew the results of his acts but was recklessly or wantonly indifferent to the results.

REFERENCES FOR POINTS IN HEADNOTES

[1] 40 Am Jur 2d, Homicide §§ 54, 70, 531.
Absence of evidence supporting charge of lesser degree of homicide as affecting duty of court to instruct as to, or right of jury to convict of, lesser degree. 102 ALR 1019.

[2] 57 Am Jur 2d, Negligence §§ 99, 100.

[3] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 281, 283, 284, 291, 337.
Test or criterion of term "culpable negligence," "criminal negligence," or "gross negligence," appearing in statute defining or governing manslaughter. 161 ALR 10.

[4] 7 am Jur 2d, Automobiles and Highway Traffic § 188.
8 Am Jur 2d, Automobiles and Highway Traffic §§ 720, 721.
"Assured clear distance" statute or rules as applied at hill or curve. 133 ALR 967.

[5] 57 Am Jur 2d, Negligence §§ 94, 97, 99, 100.

[6] 57 Am Jur 2d, Negligence §§ 94, 95, 301, 302.

[7, 8] 58 Am Jur, Witnesses § 734 *et seq.*

3. Homicide—Negligent Homicide—Manslaughter—Involuntary Manslaughter—Automobiles—Statutes—Speed.

The question of whether a defendant was driving an automobile at an immoderate rate of speed shall not depend upon the rate of speed fixed by law for operating the vehicle in a prosecution for either involuntary manslaughter or negligent homicide.

4. Automobiles—Statutes—Assured Clear Distance Statute—Negligence Per Se—Instructions to Jury.

Violation of the statute which provides that a person shall not drive a vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured, clear distance ahead constitutes negligence per se; a jury instruction to this effect is proper where the jury is charged that if they find that the defendant has violated the statute they should also find that the defendant was negligent per se (MCLA 257.627[a]).

5. Homicide—Negligent Homicide—Negligence—Slight Negligence—Gross Negligence.

A negligent homicide is caused by negligence which is more than slight and less than gross, and whether such negligence exists is for the jury to determine.

6. Homicide—Negligent Homicide—Manslaughter—Instructions to Jury—Negligence—Slight Negligence—Ordinary Negligence—Gross Negligence—Statutes.

An instruction to the jury that slight negligence would not support a finding of guilt of either manslaughter or negligent homicide was nonprejudicial where the instruction was given in the course of discussing the distinction between slight, ordinary and gross negligence and the fact that the distinction between ordinary and gross negligence meant the difference between a conviction of manslaughter, which carries a maximum sentence of 15 years, and a conviction of negligent homicide which carries a maximum sentence of two years (MCLA 750.324, 750.321).

7. Witnesses—Criminal Law—Credibility—Impeachment—Convictions—Misdemeanors—Felonies—Discretion—Articulating Discretion.

Prior misdemeanor convictions may not be used to impeach the credibility of a witness; a court has discretion to admit prior felony convictions for impeachment purposes but the court must articulate its discretion on the record (but not in the presence of the jury).

8. WITNESSES—CRIMINAL LAW—IMPEACHMENT—EVIDENCE—PRIOR
    CRIMINAL RECORD—ADMISSIBILITY—DISCRETION—PROBATIVE
    VALUE—BAD-MAN EFFECT.
    A court deciding upon objection of counsel to the admission of a
    witness's prior criminal record for purposes of impeachment,
    must weigh the probative value of the conviction record against
    the prejudicial "bad man" effect that admission of the record
    might have on the jury.

Appeal from Recorder's Court of Detroit, Lawrence D. Silverman, J. Submitted Division 1 April 15, 1975, at Detroit. (Docket No. 19351.) Decided June 9, 1975. Leave to appeal denied, 394 Mich 830.

Hubert Florida was convicted of manslaughter in the operation of an automobile. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Barry J. Siegal,* Assistant Prosecuting Attorney, for the people.

*Zemke & Lustig, P. C.,* for defendant on appeal.

Before: ALLEN, P. J. and BRONSON and N. J. KAUFMAN, JJ.

ALLEN, P. J. Defendant appeals as of right from a jury verdict in the Recorder's Court, Traffic and Ordinance Division, of manslaughter in the operation of an automobile. MCLA 750.321; MSA 28.553. October 16, 1973, he was sentenced to a term of 3 to 15 years in prison.

Because defendant's credibility, the degree of negligent operation of the vehicle, and the proper definition of gross negligence are the essential elements in issue on this appeal, a recitation of

the facts is important. Sometime before midnight May 25, 1973, defendant and deceased, owner of the vehicle involved, were engaged in drinking near the intersection of Sproat and Park streets in the City of Detroit at a point approximately one block west of the scene of the accident. Shortly after midnight, defendant and deceased drove off in a Buick, proceeding eastward on Sproat toward the Woodward and Sproat intersection. Though the speed limit on Sproat was 25–30 miles per hour, the car was moving about 70 miles per hour and the tires were squealing. As the Buick approached Woodward, its right front fender struck the left rear corner of a garbage truck parked along the curb on the right side of Sproat, then careened into the rear of a Chevrolet stopped on Sproat to cross Woodward. The impact knocked the Chevrolet into a gas station across Woodward, and the Buick came to rest with its right front end in the second southbound lane of Woodward.

After the incident, defendant was found behind the steering wheel with abrasions on his head. The passenger side of the Buick was crushed in, its dashboard and hood pushed back into the passenger seat. Deceased was found on the floor on the passenger side. Several witnesses testified defendant was behind the wheel after the impact but defendant informed officers who arrived at the scene that the deceased was the driver. Defendant's statement was substantiated by one witness who said that the Buick had passed her just prior to the accident and at that time she observed defendant riding on the passenger side. Defendant tried the case on the theory that he was the passenger in the Buick and not the driver.

Because we find error as to issue III raised by defendant we shall consider this claim of error

first and thereafter discuss such other issues as may be helpful upon retrial of this case. Relying upon *People v Orr,* 243 Mich 300; 220 NW 777 (1928), and *People v Keiswetter,* 7 Mich App 334, 340; 151 NW2d 829 (1967), defendant argues that the trial court committed reversible error in its instruction to the jury regarding the definition of gross negligence. *Orr* set forth the necessary elements which must be found to convict one of involuntary manslaughter, stating:

"(1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another.

"(2) Ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand.

"(3) The omission to use such care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another." 243 Mich at 307; 220 NW at 779.

The Supreme Court subsequently approved a jury instruction defining gross negligence in accordance with the above, and referred to the fact that the defendant-driver had "[k]nowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another". *People v Layman,* 299 Mich 141, 145–146; 299 NW 840 (1941). *Keiswetter* also enumerated the three elements involved in a charge of involuntary manslaughter. 7 Mich App at 340; 151 NW2d at 831.

In the instant case, the trial court instructed the jury on the definition of gross negligence. While doing so, the court charged:

"that wilful or wanton disregard for the safety of persons means the commission of conscious acts or omissions which the driver knows or should know create an unreasonable amount of injury to persons."

However, the trial court continued, stating:

"It is not necessary, to be wilful or wanton, for the driver to be personally conscious of the danger created by the manner of driving; it is sufficient that he should realize it."

The trial court continued, noting that the driver's inability or unwillingness to recognize the danger may be a factor of his reckless disposition, and stated "[i]t is sufficient that the driver has reason to know of circumstances and probabilities which should apprise an ordinary, prudent, and reasonable driver of the highly dangerous character of his driving". In the next sentence, the trial court charged the jury that for the driver to be grossly negligent or willful or wanton, his conduct "must be conscious on his part, but it need not be intentional in the sense that he intended to cause harm". The court correctly charged that gross negligence "supplies or takes the place of the intent". See *People v Campbell,* 237 Mich 424, 428; 212 NW 97 (1927). However, the trial court then continued, stating: "All that is necessary is that the driver should realize the strong probability of harm likely to ensue even though he hopes or even expects nothing will happen".

Having examined the jury instructions as a whole, we have determined that the trial court failed to properly instruct the jury on the elements of involuntary manslaughter, and in particular erroneously defined the concept of gross negligence. Plaintiff's cases are inapposite. *People v Sauer,* 143 Mich 308, 310; 106 NW 866 (1906), involved the approval of a trial court's jury instruction which included the statement that defendant did not have the right to "knowingly point [his] gun in the direction of any person". This

would seem to support defendant's contention that the trial court's statement that it was not necessary for defendant to know of the danger was error.[1] *People v Ryczek,* 224 Mich 106, 112; 194 NW 609 (1923), involved an auto-pedestrian accident, in which the court said that if defendant had even casually glanced ahead of him, "he would have observed the children approaching". This seemingly would support the prosecutor's contention that the trial court's instruction that defendant "should have" recognized the danger, was a proper instruction. However, *Ryczek,* while discussing the "thoughtless disregard of consequences" aspect of gross negligence, does not contain a discussion as to the three elements enumerated above, and we do not read it as precluding the requirement that those elements be articulated to the jury.

Further, the people have referred the Court to 3 Gillespie, Mich Criminal Law and Procedure (2d ed), § 1670, Form 793, pp 2022–2023, in support of the trial court's instruction. That form instruction fails to contain the language at issue, but a further examination of Gillespie, *supra,* has revealed that Form 794, p 2023, contains the discussion of the three necessary elements which must be found to support a conviction of involuntary manslaughter. Further, Gillespie, *supra,* Form 797, p 2025, contains a definition of gross negligence of the driver of an automobile charged with involuntary manslaughter, and includes a discussion of the three necessary elements which we have discussed above, citing therefor, *People v Layman, supra.* See also 3 Gillespie, Mich Criminal Law and Pro-

[1] As well as the cases discussed above, *see People v Campbell, supra,* wherein the Court noted that "gross negligence rests on the assumption that [defendant] did know but was recklessly or wantonly indifferent to the results". 237 Mich at 429; 212 NW at 99.

cedure (2d ed), § 1658, pp 2003–2004, relying upon *People v Orr, supra.*

Although defense counsel failed to object to the trial court's jury instructions, we find that manifest prejudice has resulted in the trial court's failure to include "legally essential ingredients" of the charge of involuntary manslaughter. The trial court failed to properly define gross negligence, and we find that defendant's right to have the jury properly instructed upon the elements of the crime was abridged. *People v Liggett,* 378 Mich 706, 714; 148 NW2d 784, 788 (1967). Therefore, we must reverse defendant's conviction and remand for a new trial.

Defendant's allegation of error number IV, is the impropriety of the trial court's instruction that the violation of the assured clear distance statute, MCLA 257.627(a); MSA 9.2327(a), was negligence per se. The court charged the jury that if they found that defendant had violated the provisions of that statute, the jury should find that he was negligent as a matter of law. The court charged that if the jury found that defendant had violated that statutory provision, said violation "would amount to at least ordinary negligence, and perhaps gross negligence". The jury was instructed to determine, from all of the surrounding circumstances and facts, including whether defendant had violated the assured clear distance rule, as to whether defendant was ordinarily or grossly negligent. While defendant has not challenged the following on appeal, we note that the court further charged the jury on the applicability of the statute making it unlawful to drive a motor vehicle while under the influence of intoxicating liquor, MCLA 257.625; MSA 9.2325, and the statute making it unlawful for one to drive when his visibility is

impaired due to intoxicating liquor. MCLA
257.625b; MSA 9.2325(2). Subsequent thereto, the
court explained the difference between intoxica-
tion and impairment, and said that if the jury
found that defendant drove his vehicle when visi-
bly impaired, the jury should find that he was
negligent as a matter of law because he had vio-
lated the state statute. The court further charged
that if they found a violation of either of the two
statutes, said violation would "constitute at least
ordinary negligence and perhaps gross negli-
gence".

A number of cases have held that reversible
error occurred when the trial court instructed the
jury that if they found that defendant had violated
a state statute regulating the speed limit, the jury
should find that defendant was negligent per se.
*People v Spence,* 250 Mich 573, 575–577; 231 NW
126 (1930), *People v DeWitt,* 233 Mich 222, 225;
206 NW 562 (1925), and *People v Dougherty,* 232
Mich 46, 48; 204 NW 763 (1925). Further, our
Court has noted that reversible error did not occur
when the trial court failed to suggest that a negli-
gence per se conclusion could be drawn from testi-
mony as to the speed of defendant's vehicle. *People
v Corbin,* 31 Mich App 338, 341; 187 NW2d 705
(1971).

An examination of those cases has revealed that
error was found with the instruction because it
conflicted directly with a statutory provision which
stated that the question of defendant's speed was a
question of fact for the jury, and the issue of
whether defendant was driving at an immoderate
rate of speed "shall not depend upon the rate of
speed fixed by law for operating such vehicle".
*Spence,* 250 Mich at 576–577, *DeWitt,* 233 Mich at
225 and *Dougherty,* 232 Mich at 48. Currently, it

is provided in MCLA 750.326; MSA 28.558, that in a prosecution for either involuntary manslaughter due to the use of an automobile or negligent homicide, the question of "whether the defendant was driving at an immoderate rate of speed shall not depend upon the rate of speed fixed by law for operating such vehicle". Thus, it is clear that reversible error would have resulted if the trial court had instructed that a violation of the speed limit would have constituted negligence per se. However, the trial court failed to do so, and we have determined that the "speed" cases cited above are inapplicable to our situation. They were concerned with a specific conflict between the jury instruction and a statute, and did not discuss the problem of applying the "per se" doctrine to a criminal case.

*People v Clark,* 295 Mich 704, 709; 295 NW 370 (1940), found reversible error where the trial court instructed the jury that defendant was guilty of negligence in apparently failing to stop before entering the path of traffic on a highway. The Court said that the question of defendant's negligence was one for the jury. In our case, the trial court did not charge that defendant was negligent, but merely that if the jury found that he had violated the provisions of the statute, defendant would be negligent per se. *Clark* is apparently consistent with the recent decision of *People v Reed,* 393 Mich 342, 351; 224 NW2d 867, 871 (1975), wherein the Court found reversible error when the trial court instructed the jury that an essential element of the offense had existed as a matter of law. The instant court did not so instruct, and the question before us is whether reversible error was committed when the court instructed that defendant could be found negligent

per se if the jury found that he had violated a statute.

*People v Good,* 287 Mich 110; 282 NW 920 (1938), requires us to affirm this portion of the trial court's jury instructions. In *Good,* the trial court instructed the jury that defendant would be guilty of negligence if the jury found that the deceased person was standing in the highway and that defendant struck the deceased because he failed to observe her. 287 Mich 113; 282 NW at 922. The Court in *Good* found no error in the instruction, and rejected defendant's contention that error had occurred and that the instruction had the effect of telling the jury that defendant's failure to observe the deceased was negligence as a matter of law. 287 Mich at 114; 282 NW at 922.

In *Good,* the trial court prefaced its "negligence per se" jury instruction with a condition which had to be found before the negligence per se rule could come into play. Namely, the jury had to first find that defendant had violated his duty to observe pedestrians before they could find that he was negligent per se. Likewise, the instant trial court charged the jury that if they found that defendant had violated the statutes discussed above, they should find defendant negligent per se. Violation of the assured clear distance statute has been held to constitute negligence per se. *McKinney v Anderson,* 373 Mich 414, 419; 129 NW2d 851, 853 (1964). In light of *Good, supra,* we find no manifest prejudice in the application of that rule in the instant case.

Defendant contends in issue II that the trial court erred in instructing the jury on "slight negligence", and argues that Michigan makes no distinction between slight (or "mere") negligence and actionable or ordinary negligence, citing

*Schattilly v Yonker,* 347 Mich 660, 669; 81 NW2d 343 (1957), and *Spence v Three Rivers Builders & Masonry Supply,* 353 Mich 120, 130; 90 NW2d 873 (1958). The former, a personal injury case, referred to a number of other civil decisions in the course of noting that Michigan fails to distinguish between mere negligence and actionable negligence. The latter, a breach of warranty case, noted that there was only one degree of care recognized in the law, and refused to apply a higher degree of care as a way to avoid the ancient "lack of privity" defense.

On the other hand, *People v Campbell,* 237 Mich 424, 429; 212 NW 97 (1927), made the distinction between slight negligence, ordinary negligence, and gross negligence. *Campbell* said: "Slight negligence is never actionable either in the civil [a questionable statement in light of cases referred to above] or criminal law and is not so under this statute [MCLA 750.324; MSA 28.556—Negligent Homicide]". *People v McMurchy,* 249 Mich 147, 151; 228 NW 723 (1930), referred to *Campbell* and noted that a negligent homicide is caused "by more than slight and less than gross negligence". Our Court has recently recognized these two decisions in the course of noting that the jury has the problem of making the "practical distinctions" between negligence greater than slight yet less than gross * * * ". *People v Jeglum,* 41 Mich App 247, 253; 199 NW2d 854 (1972). Thus, these authorities would seemingly allow a jury in a criminal case to be advised as to the distinctions discussed above, where in fact the distinction between ordinary negligence and gross negligence spells the difference between a conviction for a 15-year maximum, MCLA 750.321; MSA 28.553, and a 2-year maximum, MCLA 750.324; MSA 28.556

and MCLA 750.325; MSA 28.557. In light of the above Supreme Court cases, and the fact that there is a distinction between ordinary and gross negligence as far as the crime for which the defendant will be found responsible is concerned, we find that this defendant suffered no prejudice when the trial court, in the course of discussing these distinctions, also instructed the jury that slight negligence would fail to support a finding of guilt of either involuntary manslaughter or negligent homicide.

Upon retrial of this cause, defendant's credibility is certain to again become a key issue. Therefore, we shall discuss the errors claimed by defendant to constitute reversible error in issue I. However, we should caution that the rules governing impeachment of a defendant who takes the stand have been modified since the trial of this case.[2]

On cross-examination of the defendant who voluntarily took the stand, the prosecution attempted to impeach the defendant's credibility by inquiring concerning his prior convictions as follows:

1. Regarding conviction July 28, 1946, for driving a motorscooter without an operator's license. No objection was made on the record.

2. Regarding being convicted six times of being a "common drunk". Defense counsel objected that

---

[2] The present case was tried in October 1973. Subsequent to that time the Supreme Court has ruled in *People v Renno,* 392 Mich 45; 219 NW2d 422 (1974), that prior misdemeanor convictions may not be used for impeachment purposes. This rule is not to be applied retroactively but only to cases tried after June 25, 1974. *People v Harris,* 56 Mich App 517, 528; 224 NW2d 680, 685 (1974). More recently, the Supreme Court held in *People v Cherry,* 393 Mich 261, 262; 224 NW2d 286, 287 (1974), that the trial court must not only exercise its discretion but must articulate it on the record. Thus, on retrial of the present case, the prior misdemeanor convictions of defendant are not admissible for impeachment purposes. The admissibility of the prior felony convictions is discretionary with the trial court but the court must state its reasons on the record (but not in the presence of the jury.)

such was not material for impeachment purposes, and was improper and prejudicial. The court sustained the objection but permitted the prosecutor to reword the question. Thereafter the prosecutor inquired concerning convictions for being drunk on June 8, 1971, again on August 18, 1967, again on June 13, 1967, and finally in 1953. No objection was entered on each question.

3. Regarding failure to report a dead body in 1952. Defense counsel did not place an objection on the record.

4. Regarding conviction for assault and battery in 1949. Defense counsel did not place an objection on the record.

5. Regarding breaking and entering in the nighttime 25 years ago. Defense counsel objected that such was not proper for impeachment purposes, but the objection was overruled.

6. Regarding conviction for nonsupport in 1964. Defense counsel objected, and the objection was sustained and the jury instructed to disregard the question and answer.

Citing *People v Jackson,* 391 Mich 323, 332; 217 NW2d 22 (1974), defendant contends it was prejudicial error for the trial court to permit evidence of all of the prior convictions. Counsel has cited only a part of the majority opinion in *Jackson.* A more apposite portion appears at 391 Mich at 336; 217 NW2d at 26, where the facts show that prior to defendant's taking the stand, Jackson's attorney objected to admission of any part of client's conviction record. Counsel's objection in *Jackson* automatically triggered the *Luck-Farrar* rule requiring the trial court to weigh the probative value of admitting defendant's prior criminal record against the prejudicial "bad man" effect it might

have on the jury.[3] The rule applies only where objection is made.

"As stated in *People v Pollard,* 39 Mich App 291, 292 [197 NW2d 546] (1972):

" 'As a general proposition, the prior conviction record of a witness-including a defendant in a criminal case who takes the stand to testify in his own behalf—is admissible to impeach his credibility. * * * In contrast with *People v Farrar,* 36 Mich App 294, 306 [193 NW2d 363] (1971), in this case the trial judge was not asked to exclude, in the exercise of discretion, reference to the defendant's conviction record.'

"Where the trial judge's discretion has not been invoked, there can be no abuse of that discretion, and consequently no error." *People v Jones,* 44 Mich App 633, 638; 205 NW2d 611, 614 (1973).

*Jones* has been followed in *People v Downs,* 45 Mich App 130, 134; 206 NW2d 241 (1973), and *People v Coffman,* 45 Mich App 480, 488–489; 206 NW2d 795 (1973). Since no objection was raised to convictions numbered 1 to 4 inclusive above and *Renno, supra,* was not yet decided, we find no error. Counsel did object to admission of the prior conviction for breaking and entering and this objection called upon the judge to exercise his discretion under the *Luck-Farrar* rule. The court did exercise its discretion and allowed the question, though it did not articulate on the record its reasons as now required by *Cherry, supra.* Given the circumstances of this case we cannot say the court's discretion was improperly exercised. The

---

[3] *Luck v United States,* 121 US App DC 151; 348 F2d 763 (1965), *People v Farrar,* 36 Mich App 294; 193 NW2d 363 (1971). The *Luck-Farrar* construction of MCLA 600.2158; MSA 27A.2158 and MCLA 600.2159; MSA 27A.2159, has been followed in subsequent Michigan Court of Appeals decisions: *People v Sanders,* 43 Mich App 698; 204 NW2d 706 (1972), *People v Johnson,* 46 Mich App 212; 207 NW2d 914 (1973), *People v Osteen,* 46 Mich App 409; 208 NW2d 198 (1973), *People v Jackson, supra, People v Cherry, supra.*

offense charged was a felony rather than a misdemeanor. Further, the court did instruct the jury that the fact defendant may have been guilty of violations of law in the past had no bearing on whether the defendant would be guilty of the offense charged but might be considered in evaluating defendant's credibility.

Finally, defendant contends error was committed when the court, upon receiving a note from the jury asking for a reading to the jury of the testimony of four witnesses, granted the request even though defendant's counsel was not present. After lunch and after the court reporter had time to review her notes, the testimony of the four witnesses was read back to the jury at about 3:10 p.m. Whatever error there may have been—and we do not conclude that there was—was cured since defense counsel was present when the jury returned after lunch. He raised no objection to the court's action and made no objection to the rereading. We find no error.

Reversed and remanded for a new trial by reason of trial court's failure to properly instruct the jury as discussed above.