PEOPLE v HEMPSTEAD

Docket No. 77509. Submitted May 9, 1985, at Lansing.—Decided July 16, 1985.

Steven J. Hempstead was convicted of involuntary manslaughter following a jury trial in Midland Circuit Court, Tyrone Gillespie, J. The charges against defendant arose out of the death of a passenger in a vehicle with which the vehicle driven by defendant collided. The theory of the prosecution was that defendant was intoxicated at the time of the accident. There was testimony establishing that defendant had consumed several alcoholic drinks prior to the accident, that he was driving erratically prior to the accident, that he turned suddenly into oncoming traffic, and that he was glassy eyed, uncoordinated and, from all appearances, very intoxicated at the scene of the accident. A blood sample was taken pursuant to a search warrant, and testing of the sample revealed that the defendant's blood alcohol content was .28 percent. The trial court instructed the jury in accordance with the Criminal Jury Instruction which incorporates the presumption relative to intoxication contained in the implied consent law. Defendant appealed, urging that it was reversible error for the trial court to instruct the jury that it could draw the inferences permitted by the implied consent law. *Held:*

The presumption as to intoxication based on blood-alcohol levels contained in the implied consent law is only applicable where the blood sample is taken pursuant to the implied consent law rather than pursuant to a warrant. Accordingly, it was error for the trial court to instruct the jury as to the presumptions contained in the implied consent law; however, that error was harmless, since the evidence clearly established, without the use of any inferences, that the defendant was intoxicated at the time of the accident.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] Am Jur 2d, Automobiles and Highway Traffic § 296 *et seq.*

Construction and application of statutes creating presumption or other inference of intoxication from specified percentages of alcohol present in system. 16 ALR3d 748.

R. L. TAHVONEN, J., concurred in the result but would hold that the statutory presumptions are applicable to involuntary manslaughter prosecutions even where the blood sample was taken pursuant to a warrant.

OPINION OF THE COURT

1. INTOXICATING LIQUORS — MANSLAUGHTER — BLOOD-ALCOHOL TESTS — IMPLIED CONSENT STATUTE — PRESUMPTIONS.

A jury in a prosecution for involuntary manslaughter based upon a death allegedly caused by the defendant's operation of a motor vehicle while intoxicated should not be instructed as to the presumptions with respect to intoxication contained in the implied consent statute where the sample of blood for the blood-alcohol test was obtained pursuant to a warrant rather than pursuant to the implied consent statute, since the presumptions contained in the implied consent statute are applicable only to prosecutions brought pursuant to the implied consent statute; however, instructing the jury as to those presumptions is harmless error where the evidence clearly established that the defendant was severely intoxicated (MCL 257.625a; MSA 9.2325[1]; CJI 15:2:03).

CONCURRENCE BY R. L. TAHVONEN, J.

2. INTOXICATING LIQUORS — IMPLIED CONSENT STATUTE — BLOOD-ALCOHOL TESTS — MANSLAUGHTER.

*The presumptions contained in the implied consent statute relative to whether a vehicle operator is intoxicated based on blood-alcohol level are applicable to a manslaughter prosecution arising out of a death allegedly resulting from the operation of an automobile by the defendant while intoxicated even where the blood sample for the blood-alcohol test is obtained pursuant to a warrant rather than pursuant to the implied consent statute (MCL 257.625a; MSA 9.2325[1]; CJI 15:2:03).*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Gerald L. White,* Prosecuting Attorney, and *John K. Bunce,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Ronald J. Bretz),* for defendant on appeal.

Before: R. B. BURNS, P.J., and S. J. BRONSON and R. L. TAHVONEN,* JJ.

PER CURIAM. Defendant was convicted of involuntary manslaughter, MCL 750.321; MSA 28.553, following a jury trial in the Midland County Circuit Court. Defendant was sentenced to a prison term of from 3 to 15 years and now appeals as of right from his conviction.

Defendant's conviction stemmed from a fatal car accident which occurred on January 22, 1983. Prior to the accident, defendant consumed at least four or five 8-ounce drinks containing 190 proof whiskey. James Smavenka testified that, while traveling on Haley Street, he saw defendant's gold Chrysler coming towards him in his lane, forcing him to pull over to the right curb lane. Smavenka turned around and followed defendant, watching him stop at an intersection for a green light, sit through a red light, another green light and then turn right on a red light in front of seven or eight cars. Smavenka then stopped at a gas station and notified the Midland police. Two other witnesses watched defendant make a sudden left turn into oncoming traffic, striking a car and then colliding with a van. Margaret McCabe, a passenger in the car, died as a result of injuries suffered in the collision.

Officer David Childers, one of several Midland police officers to arrive on the scene, testified that he smelled alcohol on defendant, that defendant's eyes were red and glassy, and his speech slurred. Defendant fumbled badly with his wallet and seemed to be unaware of the situation and the severity of the accident or injuries. Childers also testified that defendant was unstable and weaving,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

unable to recite the alphabet, and that his eyes did not respond to the light of the flashlight. In Childers' opinion, defendant was extremely intoxicated. The other police officers on the scene, as well as other witnesses and bystanders, agreed that defendant was extremely intoxicated. Shortly after the accident, a blood sample was taken from defendant pursuant to a search warrant. The test revealed that defendant's blood alcohol content was .28 percent.

On appeal, defendant argues that the trial court erred reversibly in instructing the jury according to CJI 15:2:03 which incorporates the statutory presumption set forth in the implied consent statute, MCL 257.625a; MSA 9.2325(1). We agree that the statutory presumption was not applicable in this case, and therefore the trial court should not have read CJI 15:2:03. However, we do not believe the error requires reversal of defendant's conviction.

The trial court, in instructing the jury as to the statutory presumption, stated:

"Now, one way of determining intoxication is by measuring the alcoholic content of the blood. There was testimony in evidence in this trial that a blood test was given to the Defendant. This test measures the amount of alcohol in a person's blood.

"If you find that there was at the time of operating .07 or less by weight of alcohol in the Defendant's blood, there is an inference under the law that the Defendant was not under the influence of alcohol at that time. You may find from this blood alcohol level that the Defendant was not operating under the influence, but you are not required to do so.

"If you find that there was a time of operating more than .07 percent but less than .10 by weight of alcohol in the Defendant's blood, there is an inference under the law that the Defendant's ability to operate a motor vehicle was impaired. You may find from this blood

alcohol level that the Defendant's ability to operate was impaired, but you are not required to do so.

"If you find that there was at the time of operating .10 or more by weight of alcohol in the Defendant's blood, there is an inference under the law that the Defendant was under the influence at that time. You may find from this blood alcohol level that the Defendant was operating under the influence, but you are not required to do so.

"In considering the evidence and arriving at your verdict, you may give the blood test whatever weight you believe it deserves. The result of a blood test is but one factor you may consider, along with all the other evidence concerning the condition of the Defendant at the time he was operating the motor vehicle."

Defendant argues that the use of a search warrant to obtain the blood sample from defendant for the blood-alcohol test removed this case from the implied consent statute, MCL 257.625 *et seq.;* MSA 9.2325 *et seq.,* thereby rendering the statutory presumption inapplicable. We agree.

In *People v Keen,* 396 Mich 573; 242 NW2d 405 (1976), our Supreme Court held that where the blood samples for blood-alcohol tests were obtained pursuant to the implied consent statute, those results would only be admissible in the statutorily specified prosecutions. Similarly, in *McNitt v Citco Drilling Co,* 397 Mich 384; 245 NW2d 18 (1976), the Court held that the results of blood-alcohol tests done on a blood sample obtained pursuant to the implied consent statute were inadmissible in a civil wrongful death action where the proper statutory procedures were not followed by the police.

The rationale behind the Court's holdings in *Keen* and *McNitt* is that the implied consent statute provides certain protections to defendant in exchange for his consent to having a blood sample taken. It would, therefore, exceed the scope

of defendant's consent to utilize the test results in
a type of case not contemplated by the defendant
at the time of consent and in which the penalties
may be drastically different than those believed by
the defendant. In addition, the implied consent
statute offers protection to the hospital personnel
administering the test and to the officers involved
in the investigation. See *People v Pittinger,* 105
Mich App 736, 742-743; 307 NW2d 715 (1981);
*People v Cords,* 75 Mich App 415, 420-421; 254
NW2d 911 (1977); *People v Weaver,* 74 Mich App
53; 253 NW2d 359 (1977).

In *People v Cords, supra,* we held that where, as
in the instant case, a blood-alcohol test is taken
pursuant to a proper search warrant, the issue of
consent is removed and the implied consent stat-
ute is simply inapplicable. Because of the search
warrant, there is no reliance on the implied con-
sent statute by defendant, the hospital personnel
or officers. Further, there is no triggering of pre-
sumptions under the statute and no need to ob-
serve specific statutory procedures. 75 Mich App
421.

Because the blood-alcohol test results in the
instant case were obtained pursuant to a valid
search warrant, the implied consent statute is
inapplicable, as are the presumptions contained in
the statute and incorporated into CJI 15:2:03. Ac-
cord, *South Dakota v Hartman,* 256 NW2d 131
(SD, 1977). Therefore, the physiological effects of
the blood-alcohol content upon defendant must be
proven by the testimony of a properly qualified
expert and not by statutory presumption. *Id.*

While the trial court erred in giving CJI 15:2:03,
the error was harmless beyond a reasonable doubt.
*People v Robinson,* 386 Mich 551; 194 NW2d 709
(1972). The evidence plainly established defen-
dant's severe intoxication, even without the statu-

tory presumption, and was sufficient to support the jury's finding that the death was the result of defendant's gross negligence.

We therefore affirm defendant's conviction.

R. L. TAHVONEN, J. *(concurring).* I concur in the result reached by my colleagues. However, I am of the opinion that the trial court properly instructed the jury concerning the statutory blood-alcohol level presumptions.

The instruction, CJI 15:2:03, is premised upon MCL 257.625a; MSA 9.2325(1). The applicable version of the statute provided that a driver's blood-alcohol level was admissible "in a criminal prosecution pertaining to manslaughter or negligent homicide resulting from the operation of a motor vehicle, while the driver is alleged to have been under the influence of intoxicating liquor". The statute further provided that the "amount of alcohol in a driver's blood at the time alleged as shown by chemical analysis of the person's blood, urine or breath shall give rise to the following presumptions". 1980 PA 515, effective April 1, 1981. It is evident to me that the plain and unambiguous language of the statute both authorizes the admission of the blood-alcohol evidence and renders the presumptions applicable in this manslaughter case.

The fact that the blood sample was taken pursuant to a search warrant does not, in my view, change this result. The statute does not suggest a distinction between samples obtained by implied consent and those obtained pursuant to a search warrant. Moreover, there is nothing in the case law, which in general construes earlier and significantly different versions of the statute, which supports the distinction. Finally, neither logic nor reasons support applying the presumptions in im-

plied consent cases and not applying them in search warrant cases. How the sample was obtained simply has nothing to do with the legal significance or evidentiary value of the blood-alcohol level.