PEOPLE v THINEL

Docket No. 80789. Submitted January 6, 1987, at Lansing. Decided
    June 1, 1987. Leave to appeal applied for.

    Paul E. Thinel was convicted of involuntary manslaughter by a
    jury in Oakland Circuit Court following the death of Carla J.
    Anderson in an accident wherein defendant allegedly drove
    while intoxicated and steered his automobile into the path of
    Anderson's oncoming automobile. The trial court, Hilda R.
    Gage, J., sentenced defendant to from seven to fifteen years in
    prison. The Court of Appeals granted defendant's delayed appli-
    cation for appeal, but denied a motion for remand to the trial
    court for consideration whether the verdict was against the
    great weight of the evidence. On appeal to the Supreme Court,
    that Court, in lieu of granting leave, reversed the Court of
    Appeals denial and ordered the case remanded to the trial
    court. 424 Mich 858 (1985). The trial court subsequently denied
    defendant's motion for a new trial and defendant once again
    appealed.

        The Court of Appeals *held:*

        1. The trial court precluded the jury from determining all
    elements of the charge against defendant by instructing the
    jury that "it is gross and culpable negligence for an intoxicated
    person to guide and operate an automobile upon a public
    highway." Despite overwhelming evidence indicating gross and
    culpable negligence, it was nonetheless for the jury to deter-

References

Am Jur 2d, Appeal and Error §§ 778, 815.
Am Jur 2d, Automobiles and Highway Traffic §§ 305-307, 377, 378,
    383, 384.
Am Jur 2d, Homicide §§ 54 *et seq.*
Construction and application of statutes creating presumption or
    other inference of intoxication from specified percentages of
    alcohol present in system. 16 ALR3d 748.
Validity of legislation creating presumption of intoxication or the
    like from presence of specified percentage of alcohol in blood. 46
    ALR2d 1176.
See also the annotations in the Index to Annotations under Harm-
    less and Prejudicial Error; Manslaughter.

mine whether defendant was grossly negligent so as to be guilty of manslaughter.

2. Evidence of defendant's 0.23 percent blood-alcohol level obtained under a search warrant was, pursuant to MCL 257.625a; MSA 9.2325(1), properly ruled admissible and gave rise to a presumption that defendant was operating a motor vehicle while under the influence of intoxicating liquor.

Reversed and remanded for a new trial.

1. HOMICIDE — MANSLAUGHTER — GROSS NEGLIGENCE.

In order to support a charge of manslaughter, three necessary elements must be found: (1) knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand; and (3) the omission to use such care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another.

2. CRIMINAL LAW — JURY INSTRUCTIONS — ELEMENTS OF CRIME — HARMLESS ERROR RULE.

An instruction to the jury that an essential element of a criminal offense exists as a matter of law is error requiring reversal; the right of the jury to determine all elements of an offense is so fundamental a right that the harmless error rule is not appropriate where the judge invades that province.

3. CRIMINAL LAW — EVIDENCE — BLOOD-ALCOHOL LEVEL.

The amount of alcohol in a driver's blood, as shown by chemical analysis, may be admitted into evidence in criminal prosecutions for several offenses including felonious driving, negligent homicide, or manslaughter resulting from the operation of a motor vehicle while the driver is alleged to have been impaired by or under the influence of intoxicating liquor or a controlled substance or a combination of intoxicating liquor and a controlled substance, or to have had a blood-alcohol content of 0.10 percent or more by weight of alcohol (MCL 257.625a[1][b]; MSA 9.2325[1][1][b]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief, Appellate Division, and *Graham K. Crabtree,* Assistant Prosecuting Attorney, for the people.

*Patrick J. Brennan,* for defendant on appeal.

Before: Hood, P.J., and Beasley and L. Town-
send,* JJ.

Per Curiam. Defendant was convicted by a jury
of involuntary manslaughter, MCL 750.321; MSA
28.553, in the vehicular death of Carla Jean An-
derson and was sentenced to from seven to fifteen
years in prison. After granting his delayed applica-
tion for leave to appeal, this Court denied his
motion to remand for a determination of whether
the verdict was against the great weight of the
evidence. Subsequently, our Supreme Court, in
lieu of granting leave, reversed this denial and
ordered this Court to remand to the trial court in
order to hear defendant's claim. *People v Thinel,*
424 Mich 858 (1985). Retaining jurisdiction, this
Court remanded to the circuit court which, follow-
ing argument, denied defendant's new trial mo-
tion. Defendant now appeals raising several claims
of error, one of which we find compels us to
reverse.

Trial testimony showed that the victim was
killed when defendant attempted to make a left
turn and struck Anderson's oncoming vehicle. Wit-
nesses testified that defendant was drunk and
became abusive at the accident scene with fire
department personnel, pushing them around. He
had very bloodshot and glassy eyes, was incoher-
ent in his speech, staggered and smelled very
strongly of alcohol.

The arresting officer testified that defendant was
unable to locate the papers for the car, yet another
officer easily found them in the glove box. The
arresting officer smelled intoxicants in the defen-
dant's car and defendant was unsteady on his feet.
Further, defendant was abusive and thought he

_____
* Recorder's Court judge, sitting on the Court of Appeals by assign-
ment.

was registering for classes when he was at the police station. Defendant was visibly upset about his car being smashed but did not know how it happened.

The other officer could also detect a strong odor of alcohol on defendant's breath. In addition, defendant's eyes were bloodshot and watery and defendant was staggering and incoherent. The emergency medical technician at Beaumont Hospital, where defendant was taken, testified that defendant smelled of alcohol, had dilated pupils, slurred his speech, weaved back and forth as he sat on the stretcher and called him and the police officers obscene names.

Herbert Wetherell, a Michigan State Police toxicologist, testified that defendant's blood contained 0.23 percent weight by volume of ethyl alcohol. Wetherell stated that such an amount would cause moderate to severe depression of the nervous system to the point of inability to adequately control fine muscle movement or make good judgmental decisions. Such a person would exhibit slurred speech, close to double vision and some degree of uncoordination. Conducting simultaneous tasks such as making an observation with one's peripheral vision while coordinating reflex movements such as moving the foot from the accelerator to the brake while activating a turn signal would be impaired.

Defendant, eighteen years old on the date of the accident, testified that he had been at a party earlier in the evening and had drunk beer and mixed drinks made with whiskey, but could not remember how much. Defendant left the party between 10:00 and 10:30 P.M., dropped off a friend, and proceeded onto northbound Rochester Road. Defendant felt that he was in sufficient control of himself to drive an automobile and saw Ms. An-

derson's car when he attempted the left turn but thought there was enough time to complete the turn. Defendant said that her car came faster than he thought it would.

In her jury instructions on involuntary manslaughter and gross negligence, the trial judge stated:

> The Defendant is charged with the crime of involuntary manslaughter, in operating his motor vehicle in such a manner as to cause the death of Carla Jean Anderson.
>
> A person commits the crime of manslaughter if, in doing the acts which caused the death, he acts with an unreasonable disregard for human life; that is, if he commits an act which is grossly negligent of human life.
>
> The defendant pleads not guilty to this charge.
>
> To establish this charge, the prosecution must prove each of the following elements beyond a reasonable doubt.
>
> First, that the Defendant was operating a motor vehicle, on or about December 23rd, 1983, at Rochester Road at Woodside, in the City of Royal Oak.
>
> Second, that he was grossly negligent in the operation of his vehicle; *that is, he operated his vehicle while under the influence of intoxicating liquor and turned left in the path of the victim's vehicle.*
>
> Third, that the Defendant's gross negligence was the cause of an accident resulting in injuries to Carla Jean Anderson.
>
> Fourth, that such injury was the cause of death.
>
> Gross negligence means more than carelessness. It means willful, wanton and reckless disregard of the consequences which might follow, from a failure to act, and indifference to the rights of others.
>
> In order to find that the Defendant was guilty of gross negligence, you must first find—you must find beyond a reasonable doubt:
>
> First, that the Defendant knew of the danger to

another; that is, that this was [a] situation requiring ordinary care and diligence, to avoid injuring another.

Second, that the Defendant had the ability to avoid harm to another, by exercise of such ordinary care.

Third, that the Defendant failed to use such care and diligence to prevent the threatened danger when, to the ordinary mind, it might have been apparent that the result was likely to cause serious harm to another.

The operation of a motor vehicle inherently requires the exercise of ordinary care and diligence to avert injury to others. *It is gross and culpable negligence for an intoxicated person to guide and operate an automobile upon a public highway.*

The trial court's jury instruction on gross negligence was error which requires reversal. The trial judge told the jury in this instruction that it was gross negligence to operate a motor vehicle while intoxicated. Despite the fact that the evidence of defendant's gross and culpable negligence was overwhelming, the determination of that fact should have been left to the jury. The failure to permit the jury to make the critical determination as to whether defendant's conduct amounted to gross negligence requires reversal and a new trial.

The prosecution argues that the gross negligence instruction in this case was properly based upon *People v Pittinger,* 105 Mich App 736, 740-741; 307 NW2d 715 (1981), and *People v Townsend,* 214 Mich 267, 273; 183 NW 177 (1921). In *Pittinger,* this Court quoted *Townsend* for the proposition that it is gross and culpable negligence to drive an automobile while intoxicated. *Pittinger* was a case wherein defendant pled nolo contendere to an involuntary manslaughter charge and the Court determined that one could infer from the evidence

at the preliminary examination that defendant was driving while intoxicated when the accident occurred and that such inference permits a finding of gross negligence on the part of defendant. The *Pittinger* Court also concluded that the operation of a motor vehicle inherently requires the exercise of ordinary care and diligence to avoid injury to others and that such exercise must be made in the form of a decision not to drive when intoxicated.

In *People v Florida,* 61 Mich App 653, 658; 233 NW2d 127 (1975), this Court considered the trial court's jury instructions on gross negligence in an involuntary manslaughter case. The Court held that the element of gross negligence takes the place of the intent element, citing *People v Campbell,* 237 Mich 424, 428; 212 NW 97 (1927). The *Florida* Court went on to find that the trial court had failed to properly instruct the jury on the elements of involuntary manslaughter due to its erroneous definition of gross negligence. The Court held:

> The trial court failed to properly define gross negligence, and we find that defendant's right to have the jury properly instructed upon the elements of the crime was abridged. *People v Liggett,* 378 Mich 706, 714; 148 NW2d 784, 788 (1967). Therefore, we must reverse defendant's conviction and remand for a new trial. [61 Mich App 660.]

The proper definition of gross negligence which is sufficient to support a conviction for involuntary manslaughter was recited in *People v Jackson,* 140 Mich App 283, 285; 364 NW2d 310 (1985), lv den 423 Mich 859 (1985), quoting *People v Orr,* 243 Mich 300, 307; 220 NW2d 777 (1928):

> (1) Knowledge of a situation requiring the exer-

cise of ordinary care and diligence to avert injury to another.

(2) Ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand.

(3) The omission to use such care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another.

In *People v Reed,* 393 Mich 342, 349, 351; 224 NW2d 867 (1975), cert den 422 US 1044, 1048 (1975), the Supreme Court held:

Once a plea of not guilty is entered, the defendant "has an absolute right to a jury determination upon all essential elements of the offense. This right, emanating from the criminal defendant's constitutional right to a trial by jury, is neither depleted nor diminished by what otherwise might be considered the conclusive or compelling nature of the evidence against him. . . . [F]urthermore, in a situation wherein an understandingly tendered waiver is not forthcoming from the defendant, under no circumstances may the trial court usurp this right by ruling as a matter of law on the essential element of the crime charged." *United States v England,* 347 F2d 425, 430 (CA 7, 1965). (Footnote omitted).

\* \* \*

We find that the right of the jury to determine all elements of an offense is so fundamental a right that the harmless error rule is not appropriate where the judge invades that province. There is a difference between commenting on the evidence and making a finding of fact for the jury. When the trial judge, as in the instant case, instructs that an essential element of a criminal offense exists, as a matter of law, we will find reversible error.

Generally, jury instructions are to be viewed in

their entirety to determine if any error requiring reversal occurred. *People v Bender,* 124 Mich App 572, 574; 335 NW2d 85 (1983). A failure to object to jury instructions which remove a factual element from the jury does not abrogate on appeal the defendant's right to have the jury properly instructed. *People v Allensworth,* 401 Mich 67, 70; 257 NW2d 81 (1977), cert den 435 US 933 (1978); *People v Florida, supra,* 660.

It appears that *Pittinger, supra,* and *Townsend, supra,* have determined that once there is a finding that defendant caused an accident by driving while intoxicated, a finding of gross negligence is required as a matter of law. However, *Reed, supra,* 349, holds that all essential elements of the offense must go to a jury in a criminal case where the defendant pleads not guilty. The defendant in *Pittinger, supra,* pled nolo contendere in the trial court so that the circuit court judge could properly make his own determination of gross negligence from the evidence of intoxication presented at the preliminary examination. *People v Pittinger, supra,* 738, 740. However, in the case at bar, defendant stood mute at arraignment and a not guilty plea was entered on his behalf. Defendant herein then faced a jury trial, and therefore the present case is distinguishable from *Pittinger.*

Here, the jury was not allowed to determine the three factors which must be shown to prove gross negligence, as outlined in *Jackson, supra.* Consequently, the jury was not properly instructed. Because under *Reed, supra,* the harmless error rule does not apply in a situation such as this, we are constrained to reverse.

We briefly address and reject defendant's argument that because defendant's blood-alcohol level was taken pursuant to a search warrant, the statutory presumption in the implied consent statute,

MCL 257.625a; MSA 9.2325(1), that he was intoxicated and the jury instructions to that effect were inapplicable. While defendant relies upon *People v Hempstead,* 144 Mich App 348; 375 NW2d 445 (1985), where two judges held that the implied consent statute did not apply where a search warrant was utilized to obtain a blood sample for a blood-alcohol test since there was no reliance on the implied consent statute by defendant, the hospital personnel or police, we find the *Hempstead* analysis inapplicable. The majority's analysis in *Hempstead* only seems appropriate when read in light of the old statutory provisions of the implied consent statute, which was extensively amended between 1979 and 1983, particularly in 1981 and 1983. The old provisions, which were construed in *People v Keen,* 396 Mich 573; 242 NW2d 405 (1976), and *McNitt v Citco Drilling Co,* 397 Mich 384; 245 NW2d 18 (1976), did not statutorily limit the use of the statutory presumptions to criminal prosecutions, as does the currently effective MCL 257.625a(1); MSA 9.2325(1)(1).

Unlike the old provisions, the current statute provides that the amount of alcohol in a driver's blood, as shown by chemical analysis, may be admitted into evidence in criminal prosecutions for several offenses, including the following:

> (b) Felonious driving, negligent homicide, or manslaughter resulting from the operation of a motor vehicle while the driver is alleged to have been impaired by or under the influence of intoxicating liquor or a controlled substance or a combination of intoxicating liquor and a controlled substance, or to have had a blood alcohol content of 0.10% or more by weight of alcohol. [MCL 257.625a(1)(b); MSA 9.2325(1)(1)(b).]

Moreover, the current § 625d, MCL 257.625d; MSA

9.2325(4), allows a blood sample to be taken in the absence of consent by court order. Consequently, the issue of consent does not appear to be controlling under the currently effective implied consent statute. Accordingly, as to the issue whether a statutory presumption of intoxication applies to a case where the blood sample was obtained by search warrant, we decline to follow *Hempstead.*

Because we find that reversal is mandated based on the court's erroneous jury instruction on gross negligence, we need not consider defendant's other issues. Defendant's conviction is reversed and the case is remanded for a new trial.